# BERNHEIMER BROS. *vs.* LENA BECKER.

*Waiver of Exception—False Arrest and Imprisonment—Liability of C·-Partners—Ratification—Authority of Employee to Make Arrest —Instructions—Punitive Damages.*

When, at the close of the plaintiff's evidence, the defendant excepts to the refusal of the Court to grant his prayer withdrawing the case from the jury, and then offers his own evidence but does not renew the prayer at the close of the whole case, the exception so taken is waived.

The manager of a department in an ordinary business establishment has no implied authority to arrest and search parties suspected by him of stealing goods.

Any deprivation of the liberty of a person without his·consent, whether by violence, threats or otherwise, constitutes an imprisonment within the meaning of the law.

When one partner has unlawfully caused a person to be arrested, his co-partner is not jointly liable therefor in an action of tort unless he previously authorized or subsequently ratified the act.

In an action for false arrest a prayer instructing the jury that if they find for the plaintiff they may award punitive damages is erroneous when it does not require the jury to find, as a condition of awarding punitive damages, that the alleged wrong to the plaintiff had been inflicted maliciously, or wantonly, or under circumstances of contumely and indignity.

In an action for false arrest and imprisonment against two partners and their employee, the plaintiff testified that while in a department store owned by the two partners she took a pair of shoes from a counter, where they were exposed for sale, and was going with them in her hand to a nearby counter to select another pair, when she was seized by the manager and compelled to go up stairs to a room where one of the partners, H, caused her to be searched, and when nothing was found on her, she was allowed to go.  Afterwards plaintiff's husband complained to the other partner F, of the treatment of his wife and ·this partner, after a brief absence to make an inquiry, returned and ordered the plaintiff's husband off the premises.  The defendant's evidence contradicted that of the plaintiff in all material particulars.  *Held*, that a prayer is erroneous which instructs the jury that the plaintiff is entiiled to recover generally, if her evidence is believed, because it does not limit the recovery to the particular partner who participated in the arrest, and does not refer to any concurrence in that arrest by the other partner, and also because the jury are not instructed as to what facts

would justify their finding that the manager acted within the scope of his authority in arresting the plaintiff.

*Held*, further, that since the only evidence connecting the other partner, F, with the wrong complained of is that afterwards he ordered the plaintiff's husband out of the store, the jury should have been instructed that the plaintiff is not entitled to recover against the firm or the defendant F.

Appeal from the Court of Common Pleas (SHARP, J.)

*Plaintiff's 2nd Prayer.*—That if the jury find from the evidence that the plaintiff was on the second floor of the store of the defendants in Baltimore City as a prospective purchaser for the purpose of buying shoes, and was at a counter containing shoes and had a pair of shoes in her hand, and walked to another counter close by and was there looking over other shoes, and Leo Seligman, one of the employees of the defendants, and acting as the agent and servant of the defendants, and within the scope of his authority, and in charge of the said shoe department (if they shall so find) approached the plaintiff and grabbed her by the arm and said "I've got you now," and the plaintiff freed herself from his grasp and walked away for the purpose of finding Mr. Bernheimer, and had reached the first floor of said store, and the said employee came after her and again violently took her by the arm and said "You come with me," and the plaintiff refused and he forced her to go with him up-stairs again to the second floor and into a small room; and into the presence of Herman Bernheimer, one of the defendants, and that when the plaintiff was in said room the said employee at the direction of Herman Bernheimer, forcibly took hold of the plaintiff's gossamer and unbuttoned it, and forced her to take it off, and that Herman Bernheimer was in the said room during all of that time, and when the said employee had compelled the plaintiff to remove her said clothing that Herman Bernheimer said "You are all right, you can go now," then the plaintiff is entitled to recover." (*Granted.*)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Randolph Barton, Jr.*, for the appellant.

*John C. Kumpf* and *Richard A. Miller, Jr.*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellee, Lena Becker, sued the appellants individually and as co-partners in the Court of Common Pleas of Baltimore City for damages for an assault and battery and a false arrest and imprisonment.   The two causes of action were alleged in separate counts in the *narr.*  The appellants as defendants below pleaded *non cul.*  The trial of the case resulted in a judgment for the plaintiff from which they appealed.

Two exceptions appear in the record.   The first was taken to the Court's refusal to withdraw the case from the jury at the close of the plaintiff's testimony, but the defendants lost the benefit of that exception by going on with their case and failing to again raise the question by asking for the same instruction at the close of the whole testimony.   *Barabasz* v. *Kabat*, 91 Md. 53 ; *State, use of Logsdon* v. *B. & O. R. R.*, 101 Md. 359.

The second exception brings up for review the rulings of the lower Court on the prayers offered at the close of the case and the special exceptions taken to some of them.   In order to properly pass upon the questions presented by this exception it will be necessary to advert to the more important facts appearing in the evidence.   It appears from the record that the appellants, Ferdinand and Herman Bernheimer, as co-partners conduct a department store in Baltimore City, and Leo Seligman is the manager of their shoe department.   There is also evidence in the record tending to prove the following facts.   On March 14th, 1904, the appellee having gone to the Bernheimer store to purchase shoes for her infant child, selected a pair from a lot of shoes exposed for sale upon a counter and then started with the pair which she had selected in her hand, to go to a near-by counter to select another pair from the shoes thereon exposed for sale.   As she was leaving the first counter Seligman walked up, caught her by the arm and

compelled her against her protest and attempted resistance to go with him to the elevator and up-stairs and into a room into which Herman Bernheimer, one of the defendants, entered at the same time. Seligman said something, which the plaintiff did not hear, to Bernheimer, who replied to him "you search her." Seligman thereupon without her permission or assistance took off her gossamer, opened her coat and took it off and opened her skirt. Nothing having been found on her Bernheimer said "she is all right, leave her go." She put on her clothing and went home and told her husband of the occurrences and showed him bruises on her arm which she said were made by Seligman's rough handling of her. Her husband went to Bernheimer Bros'. store where he saw Mr. Ferdinand Bernheimer and complained of what had happened to his wife. Mr. Bernheimer went up-stairs and found out what he wanted and came down again and ordered the husband off the premises and gave him no satisfaction.

There was, on the contrary, evidence directly contradicting the plaintiff's account of the treatment she received at the store and tending to prove that she had taken the pair of shoes from the counter, put them under her cape and started to walk away, not toward the other shoe counter but toward the elevator. Seligman's attention having been called to her actions, by an employee of the store who had seen them, he followed her and when she got near the door she turned and dropped the shoes. Seligman picked them up whereupon she said to him "I never did anything like that before, I hope my husband won't find it out," and voluntarily went with him to the office on the second floor where she paid for the shoes and he wrapped them up for her and she carried them away. Seligman and Herman Bernheimer both positively testified that neither they nor anyone else had searched or even taken hold of her at any time at the store.

At the close of the case the plaintiff offered eight prayers, of which the Court granted the first, second and third A and refused the others. The defendant offered nine prayers, of which the Court granted the fifth and refused the others. The

plaintiff specially excepted to two of the defendants rejected prayers and the defendants specially excepted to four of the plaintiff's rejected prayers and also to her second and third A prayers which were granted and their exceptions were over-ruled. It is unnecessary for us to notice the special excep-tions of the respective parties to prayers which were subse-quently overruled.

There was no error in granting the plaintiff's first prayer which merely declared that any deprivation of the liberty of another without his consent whether by violence, threats or otherwise constitutes an imprisonment within the meaning of the law.

The plaintiff's second prayer, which was also granted, does not correctly state the law of the case in that it directs the jury that if they find the facts therein stated the plaintiff is entitled to recover generally without limiting her right to a recovery against Herman Bernheimer. The facts which the prayer requires the jury to find are her arrest by Seligman and her detention and search by him in the presence and by the direction of Herman Bernheimer and also that Seligman in the transactions mentioned was "acting as the agent and servant of the defendants and within the scope of his authority and in charge of said shoe department" of their store. Fer-dinand Bernheimer is not mentioned in the prayer, nor is any supposed concurrence in or ratification by him of the acts complained of mentioned or relied upon therein. The jury are not instructed as to what state of facts would, if found by them from the evidence, justify the conclusion that Seligman acted within the scope of his authority as the agent of the de-fendants in his conduct toward the plaintiff. Even if we as-sume that the prayer was intended to designate as authority for such a conclusion by the jury the finding by them of the fact that Seligman was at the time in charge of the shoe de-partment or that some of the alleged acts were committed in the presence of Herman Bernheimer, one of the partners of the defendant firm, the instruction would still be erroneous.

The prayer mentions no facts tending to prove that the de-

fendant firm conferred *express* authority on Seligman to arrest and search customers who came to the store when he suspected them of stealing. · This Court has repeatedly decided that an agent or employee about an ordinary business has no such an implied authority. *Carter* v. *Howe Machine Co.*, 51 Md. 298; *Tolchester Imp. Co.* v. *Steinmeier*, 72 Md. ·316.

In *Central R. R. Co.* v. *Brewer*, 78 Md. 407, this Court, in holding that an employee had no implied authority to do any acts not relating to his own particular duties, said "In *Mali* v. *Lord*, 39 N. Y. 381, the question was whether a merchant by employing a clerk to sell goods for him in his absence or a superintendent to take the general charge and management of his business at a particular store thereby confers authority upon such clerk or superintendent to arrest, detain and search any one suspected of having stolen and secreted about his person any of the goods kept in such store. The Court says "in examining this question it must be assumed that by the employment the master confers upon the servant the right to do all necessary and proper acts for the protection and preservation of his property to protect it against thieves and marauders and that the servant owes the duty to so protect it to his employer. But. this does not include the power in question * * * The master would not if present be justified in arresting, detaining and searching a person upon suspicion however strong of having stolen his goods and secreted them upon his person." The master could of course confer no greater power upon the servant than he himself possessed. Brewer's case has been cited and relied on by us in the more recent cases of *Barabasz* v. *Kabat*, 86 Md. , 36; *Turnpike Road* v. *Green*, 86 Md. 167; *Carter* v. *Worcester Co.*, 94 Md. 625.

If the Court below intended by granting the plaintiff's second prayer to authorize the jury to find a verdict against Ferdinand Bernheimer because his co-partner, Herman Bernheimer, was present at and abetted the detention and search of the plaintiff, if they found the fact of such presence and abetting, that also was error, for a partner in an ordinary mercantile business has no implied power to bind his co-partner

in such transactions as those which form the basis of the present suit.  In *Kirk & Son* v. *Garrett*, 84 Md. 409, a case closely resembling the present one, we distinctly held, upon a review of the authorities, that "one of several partners cannot drag the firm or his co-partner into a trespass by giving authority for the doing of an unlawful act in the name of the firm of which he is a member; for one partner has no power to bind the partnership to the commission of a wrongful act without the previous consent or subsequent concurrence of all of the partners."

The plaintiff's third A prayer, which was granted, instructs the jury that if they "find for the plaintiff, then they may award such damages as will not only compensate the plaintiff for the wrong and indignity she has sustained in consequence of the defendant's wrongful acts, but they may also award exemplary or punitive damages as a punishment to the defendant for such acts."   That instruction following the preceding two prayers of the plaintiff was too broad because it did not require the jury to find as a condition of awarding punitive damages that the alleged wrongs to the plaintiff had been inflicted maliciously or wantonly or with circumstances of contumely and indignity.  *Sloan* v. *Edwards*, 61 Md. 100.  The Court by the plaintiff's first prayer had instructed the jury that *any* deprivation of the liberty of another without his consent constituted an imprisonment within the meaning of the law, and therefore the instruction to them as to the measure of damages should have plainly stated the further facts to be found by them as a proper ground for the award of punitive damages in the event of their finding a verdict for the plaintiff.

We think also that the defendant's second and a-half prayer which was refused should have been granted.   It instructed the jury that there was no legally sufficient evidence to entitle the plaintiff to recover as against the firm of Bernheimer Bros. or Ferdinand Bernheimer.   The only testimony in the record directly connecting Ferdinand in any manner with the alleged wrongful acts of his brother Herman or Seligman is that of the plaintiff's husband.   He testifies that when he, being natur-

ally mad and excited, complained to Ferdinand Bernheimer of the treatment which Mrs. Becker had received at the store he (Bernheimer) "went up stairs, came down again and ordered him (Becker) out of the store." This testimony, if true, undoubtedly convicts Bernheimer of rudeness of manner but it does not of itself tend to prove a concurrence in or ratification by him of the alleged wrongful acts of Seligman and Herman Bernheimer.

Without discussing in detail the defendants other rejected prayers it is sufficient to say that we find no reversible error in their rejection.

For the erroneous action of the Court below in granting the plaintiff's second and third A prayers and rejecting the defendants' second and a-half prayer the judgment must be reversed and a new trial awarded.

> *Judgment reversed with costs and a new trial awarded.*

(Decided Novebmer 23rd, 1905.)