# MAX FLEISHER

## *vs.*

## JOSEPHINE ENSMINGER.

*False Imprisonment—Employee Charged With Theft—Evidence—Instructions—Exemplary Damages.*

In an action for false imprisonment against plaintiff's employer, based on the alleged detention of plaintiff in defendant's private office during investigation of a charge that, instead of accounting for money received by her for goods sold, she had placed it in her pocket, *held* that plaintiff was entitled to show how she came by a part of the money found in her pocket at the time of the investigation.          p. 619

Any deprivation of the liberty of another without his consent, whether by violence, threats or otherwise, constitutes an imprisonment and, if this is done unlawfully, it is false imprisonment, without regard to whether it is done with or without probable cause.          p. 620

In an action for false imprisonment against plaintiff's employer, based on the alleged detention of plaintiff, by means of threats, in defendant's private office during an investigation into an alleged theft by her, *held* that the evidence was sufficient to go to the jury.          p. 620

In an action for false imprisonment against plaintiff's employer, a prayer submitted by plaintiff which recited various facts in evidence as to defendant's conduct in summoning plaintiff to his office and there charging her with theft and telling her that he could have her arrested, and which told the jury that if such language and conduct might reasonably lead a reasonable person of the tender years of plaintiff to believe that she would be arrested if she left the room, and that plaintiff did so believe and remained because she feared arrest, and she was innocent of the theft, then their verdict must be for plaintiff, *held* to present the case fairly and to require the finding of every fact necessary to recovery.          pp. 607, 620

That defendant's prayer denying the right of recovery if the jury believed that plaintiff was satisfied and willing to remain in defendant's office, and to get her pocketbook for his inspection, was modified by the lower court by the addition of words to the effect that such satisfaction and willingness alone were not sufficient to defeat recovery if they were produced by the belief that, if she did not do any of these things, she would be arrested or force would be used, did not make the prayer misleading when considered in connection with other granted prayers.                                        pp. 620, 621

In an action for false imprisonment, *held* that it was proper to grant a prayer, not specially excepted to, that if the jury find for plaintiff, and further find that said alleged wrongs were inflicted maliciously or wantonly or with circumstances of contumely and indignity, they may award such damages as will not only compensate plaintiff for the wrong and indignity she has sustained, but they may also award exemplary or punitive damages as a punishment to defendant.               pp. 609, 621

*Decided March 22nd, 1922.*

Appeal from the Circuit Court for Washington County (WAGAMAN, J.).

Action by Josephine Ensminger, by her mother and next friend, Lida Ensminger, against Max Fleisher, for false imprisonment. From a judgment for plaintiff, defendant appeals. Affirmed.

The granted prayers of the plaintiff were as follows:

*First Prayer.*—The jury is instructed that any deprivation of liberty of another, without his consent for any length of time, whether it be by actual violence, threats or otherwise, constitutes an imprisonment within the meaning of the law.

*Second Prayer.*—The plaintiff prays the court to instruct the jury that if they find from the evidence that the plaintiff was on the first floor of the store of the defendant in Hagers-

town as a saleslady for said defendant, and did then and there sell some hair nets to a customer or customers for twenty cents, and further find that the plaintiff put said twenty cents in the outside pocket of her apron she was then and there wearing, if the jury so find, and further find that at the time she sold said hair nets to said customer or customers, another customer was waiting there for the purpose of having the plaintiff wait upon her as such saleslady, and further find that said plaintiff put said twenty cents in her said apron pocket for the purpose of waiting on said customer more quickly, and further find that it was the plaintiff's intention after she had waited on said customer, to then put said twenty cents in the cash register of said store, if the jury so find, and further find that before she had so put said twenty cents in the cash register she was notified by the defendant, or his agent and servant at defendant's request, to come to the defendant's office on the third floor of said store building, and further find that she was accompanied to the defendant's office on the third floor by said agent or servant of the defendant, and further find that when the plaintiff arrived at said office of the defendant on said third floor of said building and entered the same, the door to said office was closed by said defendant, or his agent and servant, and further find that the defendant then and there charged the plaintiff with stealing money, silk stockings or any other property from the defendant, if the jury so find, and further find that the defendant directed the plaintiff to go to the cloak room in said building and get her pocketbook from her coat and bring the same to his said office, and further find that the plaintiff, in response to said request, did go to said cloak room and get her pocketbook, and that at said time she was accompanied to said cloak room by the agent and servant of the defendant, at the defendant's request, if the jury so find, and further find that when the plaintiff returned to the defendant's office with said pocketbook, the plaintiff opened said pocketbook and showed the defendant the money therein, if the jury so find, and further find that

the defendant then and there said that he guessed this was also his money, and further find that the plaintiff remained in said office for some time before going to her duties as saleslady aforesaid, if the jury so find, and further find that while said plaintiff was in said office of the defendant, the defendant used rough, harsh and unbecoming language and conduct to and towards the plaintiff and told her she was a thief, if the jury so find, and further find that, owing to the language and manner of the defendant then and there used and shown, and all the circumstances existing, a reasonable person of the tender years of the plaintiff would have been reasonably led to believe and understand, and that the plaintiff was then and there reasonably led to believe that force would be used to compel her to go to said cloak room and get her pocketbook or to remain in said office unless she complied with the request of the defendant to go to said cloak room or remain in said office, and that as a consequence thereof she did go to said cloak room and get her pocketbook or did remain in said office, then their verdict must be for the plaintiff.

*Third Prayer.*—The plaintiff prays the court to instruct the jury that if they find from the evidence that the plaintiff was on the first floor of the store of the defendant in Hagerstown as a saleslady for said defendant, and did then and there sell some hair nets to a customer or customers for twenty cents, and further find that the plaintiff put said twenty cents in the outside pocket of her apron she was then and there wearing, if the jury so find, and further find at the time she sold said hair nets to said customer or customers, another customer was waiting there for the purpose of having the plaintiff wait upon her as such saleslady, and further find that said plaintiff put said twenty cents in her apron pocket for the purpose of waiting on said customer more quickly, and further find that it was the plaintiff's intention after she had waited on said customer to then put said twenty cents in the cash register of said store, if the jury so find, and further find that before she had so put said twenty cents

in the cash register she was notified by the defendant, or his
agent and servant at defendant's request, to come to the de-
fendant's office on the third floor of said store building, and
further find that she was accompanied to the defendant's
office on the third floor by said agent and servant of the
defendant, and further find that when the plaintiff arrived
at said office of the defendant on said third floor of building
and entered the same, the door to said office was closed by
said defendant, or his agent and servant, and further find
that the defendant then and there charged the plaintiff with
stealing money, silk stockings or any other property from the
defendant, if the jury so find, and further find that the de-
fendant directed the plaintiff to go to the cloak room in said
building and get her pocketbook from her coat and bring the
same to his said office, and further find that the plaintiff, in
response to said request, did go to said cloak room and get
her pocketbook, and that at said time she was accompanied
to said cloak room by the agent and servant of the defend-
ant, at the defendant's request, if the jury so find, and fur-
ther find that when the plaintiff returned to the defendant's
office with said pocketbook the plaintiff opened said pocket-
book and showed the defendant the money therein, if the
jury so find, and further find that the defendant then and
there said that he guessed this was also his money, and fur-
ther find that the plaintiff remained in said office for some
time before going to her duties as saleslady aforesaid, if the
jury so find, and further find that while said plaintiff was
in said office of the defendant, the defendant used rough,
harsh and unbecoming language and conduct to and towards
the plaintiff, if the jury so find, and further find that while
the plaintiff was in said office of the defendant the defend-
ant told the plaintiff that she was a thief and that he could
have her arrested, if the jury so find, and further find that,
owing to the said language and conduct of the defendant then
and there used and shown and all the circumstances then and
there existing, a reasonable person of the tender years of the

plaintiff would have been reasonably led to believe and
understand that she could not leave the said office of the de-
fendant at that time without his permission, without being
then and there arrested upon the charges then and there made
by the defendant, if the jury so find, and further find that
the plaintiff did at that time and thereby reasonably believe
and understand that if she attempted to leave said office of
the defendant at that time without his permission she would
then and there be arrested for the charges there made against
her by the defendant, if the jury so find, and further find
that the plaintiff remained there because she feared such ar-
rest, if the jury so find, and further find that after the lapse
of some time the defendant said to the plaintiff, "You can
now go," or words to that effect, and further find that the
plaintiff did not steal anything from the defendant, then
their verdict must be for the plaintiff.

*Fourth Prayer.*—If the jury find for the plaintiff, and
further find that said alleged wrongs to the plaintiff were in-
flicted maliciously or wantonly or with circumstances of con-
tumely and indignity, then they may award such damages
as will not only compensate the plaintiff for the wrong and
indignity she has sustained in consequence of the defend-
ant's wrongful act, but they may also award exemplary or
punitive damages as a punishment to the defendant for such
acts.

The defendant's prayers were as follows:

*First Prayer.*—And the defendant prays the court to in-
struct the jury that under the pleadings in this case there
is no evidence legally sufficient to entitle the plaintiff to re-
cover and their verdict should be for the defendant.

*Second Prayer.*—The defendant prays the court to in-
struct the jury that unless they find from the evidence that
the defendant said to the plaintiff, "I could have you ar-
rested," or words to that effect, there is no evidence in this

case legally sufficient to entitle the plaintiff to recover under the pleadings and their verdict should be for the defendant. And to further instruct the jury that the burden of proof is upon the plaintiff that the defendant did say such words or words to that effect to the plaintiff.

*Third Prayer.*—The jury is instructed that there is no evidence in this case legally sufficient to establish that the defendant, prior to the time, the defendant said to the plaintiff, "I could have you arrested," or words to that effect, if the jury shall find that the defendant did say such words, or words to that effect to the plaintiff, illegally restrained or falsely imprisoned the plaintiff.

*Fourth Prayer.*—The defendant prays the court to instruct the jury that if they believe from the evidence that the plaintiff was satisfied and willing to come to and remain at the office of the defendant, then at the request or direction of the defendant was satisfied and willing to go with the witness Mundey and to get her pocketbook, and was then satisfied and willing to return to and remain at the office of the defendant, then the plaintiff is not entitled to recover under the pleadings in this case, *unless the jury further find that the plaintiff was satisfied and willing to do any or all such things for the reason that she thought that if she did not, she would either then and there be arrested or that the defendant would use, or cause to be used, force to require her to do them.* (Modified by the addition of the words in italics.)

*Fifth Prayer.*—The defendant prays the court to instruct the jury that if they shall find from the evidence that the plaintiff on the 15th day of May, 1920, employed by the defendant in the department store conducted by him in Hagerstown, if the jury shall find the defendant conducted such store, as one of the salesladies therein, and shall further find that under the rules of the defendant, the plaintiff was required to ring up on a cash register provided for that purpose, the amount of each and every sale made by her, and further find that during the evening of the said 15th day

of May, the plaintiff as such employee sold two hair nets and received from a customer or customers therefor twenty cents, and shall further find that the plaintiff did not ring up the said amount on the cash register, but placed it in her apron pocket, and shall further find that the defendant saw the said actions of the plaintiff, then the defendant had reasonable ground to think that the plaintiff intended to appropriate to her own use the said twenty cents, and the jury may take into consideration the said facts in mitigation of damages, even though the jury should find for the plaintiff.

*Sixth Prayer.*—The defendant prays the court to instruct the jury that if they shall find from the evidence that the plaintiff received the sum of twenty cents from the sale of certain articles of merchandise of the defendant, sold by her as his employee, if the jury shall so find, and did not ring up and place the same in the cash register, as she was required to do under the rules of the defendant, if the jury shall so find, but placed the same in her apron pocket, and shall further find that the defendant saw the said actions of the plaintiff, then the defendant had the right to require the plaintiff to come to his office and to question her and to detain her a reasonable time until an investigation could be made, and unless they shall find from a preponderance of all the evidence that the defendant detained or restrained the plaintiff for a longer period of time than was reasonably necessary for an investigation to be made, then under the pleadings their verdict should be for the defendant (modified as follows), *but the jury is further instructed that if the defendant accomplished such detention or restraint by force or show of force or any other means that induced the plaintiff acting as a reasonable person of her years to believe that force would be used to accomplish such detention and restraint, then they cannot find for the defendant under this prayer.*

*Seventh Prayer.*—The defendant prays the court to instruct the jury that if they shall find from the evidence that the plaintiff was on or about the 15th day of May, 1920,

employed by the defendant in the department store con-
ducted by him in Hagerstown, if the jury shall find the
defendant conducted such store, as one of the salesladies
therein, and, shall further find that under the rules of the
defendant, the plaintiff was required to ring up on a cash
register provided for that purpose the amount of each and
every sale made by her, and shall further find that during
the evening of the said 15th day of May, the plaintiff sold
certain articles and received from the customer therefor
twenty cents, and shall further find that the plaintiff did
not ring up the said amount on the cash register, but placed
it in her apron pocket, and shall further find that the de-
fendant saw the said action on the part of the plaintiff,
then the defendant was justified in sending for the plaintiff
and requesting her to come to his office, and if the jury
shall further find that the defendant did so send for the
plaintiff and that the plaintiff did then go to the office of the
defendant and while there acknowledged to the defendant
that she did make the said sale and did not ring up the
amount, but placed the money received by her therefor in her
apron pocket, then the jury is instructed that the defendant
was justified in requesting or directing the witness Mundey,
another employee of the defendant, if the jury shall so find,
to go with the plaintiff to her locker in the store of the de-
fendant, if the jury shall find the plaintiff had such locker,
and to see what the plaintiff had therein, and the jury is fur-
ther instructed that then, even if they find that the defend-
ant did so send for the plaintiff and did so request or direct
the said Mundey and the said Mundey did in pursuance
thereof, go with the plaintiff for the purpose of seeing what
the plaintiff had in the said locker and then returned with
her to the office of the defendant, the said acts or any of them
on the part of the defendant did not constitute an assault
upon or a false imprisonment of the plaintiff and they can-
not find a verdict for the plaintiff for or on account of the
said acts or any of them.

*Eighth Prayer.*—The defendant prays the court to instruct the jury, that if they shall find from the evidence that the plaintiff was on or about the 15th day of May, 1920, employed by the defendant in the department store conducted by him in Hagerstown, if the jury shall find the defendant conducted such store, as one of the salesladies therein, and shall further find that under the rules of the defendant the plaintiff was required to ring up on a cash register provided for that purpose, the amount of each and every sale made by her, and shall further find that during the evening of the said 15th day of May, the plaintiff sold certain articles and received from the customer therefor twenty cents, and shall further find that the plaintiff did not ring up the said amount on the cash regitser, but placed in her apron pocket, and shall further find that the defendant saw the said action on the part of the plaintiff, then the defendant was justified in sending for the plaintiff and requesting her to come to his office.

*Ninth Prayer.*—The jury is instructed that in order to entitle the plaintiff to recover under the pleadings in this case, they must believe from the evidence either that the defendant restrained the person of the plaintiff by force or that the plaintiff had reasonable grounds to apprehend that the defendant would use or cause to be used force upon or against her if she refused to do as requested or directed by him. And the jury is further instructed that the burden is upon the plaintiff, to show by a preponderance of all the evidence that the defendant did restrain her by force or that there was, in fact, a reasonable ground of apprehension on her part that the defendant would resort to force if she refused to do as requested or directed by him, and unless they do believe from a preponderance of all the evidence that the defendant did restrain the person of the plaintiff by force, or that the plaintiff believed and had reasonable grounds for believing that the defendant would use or cause to be used force upon or against her to compel her to do what he re-

quested or directed her to do, their verdict should be for the defendant.

The defendant's special exception to plaintiff's second prayer was as follows:

The defendant especially objects and excepts to the granting of the plaintiff's second prayer as modified by the court, for the reason that there is no evidence in the case legally sufficient to enable the jury to find that the plaintiff believed, or had reasonable grounds to believe, that the defendant would then and there use force upon her if she did not comply with the requests or directions the jury shall find the defendant made of or gave to her.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Henry H. Keedy, Jr.,* with whom were *William P. Lane* and *Leo Weinberg* on the brief, for the appellant.

Mere words are not sufficient to constitute false imprisonment. There must be force or an array of force. *N. Y., P. & N. R. R. Co.* v. *Waldron,* 116 Md. 441, 448; *Tomlin* v. *Hildreth,* 65 N. J. L. 438; *Hill* v. *Taylor,* 50 Mich. 549; *Hersey* v. *O'Neill,* 36 Fed. 168; *Brushaber* v. *Stigerman,* 22 Mich. 266.

Threats to arrest, unaccompanied by acts constituting an arrest and detention, are insufficient. *Miller* v. *Ashcraft,* 98 Ky. 314.

That defendant said, "I could have you arrested," does not show such an array of force or coercion as to entitle plaintiff to recover. *Knowlton* v. *Ross* (Me.), 95 Atl. 281.

*Albert J. Long* and *Jos. W. Wolfinger,* for the appellee.

Words are sufficient to constitute an imprisonment. *Bernheimer* v. *Becker,* 102 Md. 254; *Hebrew* v. *Paulis,* 64 Atl. 121; *Petit* v. *Colmary,* 55 Atl. 344; *Pike* v. *Hanson,* 9 N. H. 491; *Ahern* v. *Collins,* 39 Mo. 145; *Brushaber* v. *Stege-*

*man,* 22 Mich. 266; *Hawk* v. *Ridgway,* 33 Ill. 473; *Johnson* v. *Tompkins,* Fed. Cas. No. 7416; 11 *Rul. Case Law,* p. 793; 3 *Starkey, Evidence,* 1448.

ADKINS, J., delivered the opinion of the Court.

On May 15th, 1920, Max Fleisher, the appellant, while in charge of the first floor of his store in Hagerstown, saw Josephine Ensminger, the appellee, who was employed as a saleswoman in said store, sell two hair nets, and drop the proceeds, twenty cents, in the pocket of her apron. It appears from the testimony that the rules of the establishment required the clerks, after making sales, to wrap up the merchandise sold and receive the money for it, before handing it to the customer, and then take the money to the cash register, ring it up, take the receipt or slip from the register, wrap it up with the merchandise, and then hand the parcel to the customer. There is a conflict of testimony as to whether appellee had been instructed in these rules, but she testifies that her practice was to do these things because she saw the other girls doing them. On this occasion, she says, she put the money in her pocket, because a lady was waiting for her to show her goods, and she did not stop to go to the cash register, intending to do so after waiting on the customer; that before she had time to do so she was sent for by appellant to go to his office on the third floor.

Fleisher testified that Hoffman, the manager of the first floor, came in right after the sale of the nets and the deposit of the money by Miss Ensminger in her pocket, and he told Hoffman to watch her pretty close and see if she would ring up the money before he called her to his office; that Miss Ensminger passed the cash register several times while he was talking to Hoffman, and before he left she passed over to the left and was folding some veils; that he then went to the second floor and from there to his office on the third floor and told the operator to call her to his office, and that she came in response to the call.

Miss Ensminger's account of the call to Fleisher's office and the subsequent occurrences was as follows:

That after Mrs. Heckert, the customer to whom she went after selling the nets, left the store, Robert Chatkins, an employee, told her Fleisher wanted to see her on the third floor and she said "all right," and she and Chatkins started to the elevator; that she had started for the register to ring up the twenty cents; that both of them went up in the elevator to the third floor; "we got off and he took me back to Mr. Fleisher's office, and on the way back to the elevator, I saw Mr. Marks coming through there on the first floor—he was getting the money from the registers and I said 'why, there is Mr. Marks now,' and he said, 'He will be up after awhile,' or something like that. We went on up and he took me back to Mr. Fleisher's office and he said 'here she is,' as he opened the door, and Mr. Fleisher said, 'tell her to come in.' I went in and he closed the door behind me, and Mr. Fleisher and Mr. Monday were in there." Monday, it appears, was janitor of the building and general utility man.

Continuing, the witness said: "Mr. Fleisher, as soon as I got in the door he said, 'Miss Ensminger, how much money have you got in that pocket?' I said, 'one dollar and twenty cents; the twenty cents is yours and the dollar is mine.' And then I started to tell him about where I got the twenty cents and the dollar and everything. I would go to say he would call me a liar and a thief. And then I told him that the twenty cents was for hair nets and the dollar was money that mother had given me to buy ribbons for the children. It was close to field day, and they had to have the ribbon for Monday morning, and I could hardly tell him, he kept hollering at me so loud and then calling me a damn liar and everything else. He called me a bastard and most everything else he could think of, and he asked me who my girl friends were, and I told him Miss Mower and Miss Darby, and he said, "Do they steal and lie like you do?" And I wanted to say no, and he kept hollering at me that I was a thief and every-

thing like that, and he asked me what church I went to and I told him St. John's, and he asked me who my pastor was, and I said Reverend Harms, and he asked me how often I went to Sunday school and I said 'most every Sunday.' I said, 'unless I am sick.' Then he asked me what kind of hose I had on and I told him lisle. He said, 'let me see,' and sort of leaned over his desk to see, and then said 'you stole them and you have been stealing hose all along. How many pair of hose have you up home that you stole from me?' and I said, 'I haven't any,' but he kept saying I was a thief and asked me what else I had up home that I had stolen from him, and I told him 'nothing,' and he kept on calling me a thief. Then he asked me if I had a pocketbook, and I told him, 'in my locker.' He asked me for my key and I told him that I had lost the key or mislaid it at home. I said I didn't know just where it was, so he asked Mr. Monday to go down and get my pocketbook, and Mr. Monday told him he would not go unless I went along. So he told me to go down with Mr. Monday, and we went down to the first floor on the elevator, and then we had to go down in the cellar like to the lockers, and Mr. Monday went along down with me and I got the pocketbook out of the locker, and he and I went upstairs on the elevator and we went to Mr. Fleisher's office, and I handed the pocketbook to Mr. Fleisher and he opened it and I had $6.21, and there was another piece of paper with a verse on it on one side and my sister's name on the other, and he looked at that and he said, 'you stole this money, too,' and he asked me where I got the money and I told him that it was my pay for that week, what I had left of pay when we was paid on Friday night. * * * While we were down stairs, Mr. Fleisher had taken the $1.20 that I had in my pocket into Mr. Sach's office—that was another manager—so he went over there and got the $1.20, and he gave me the twenty cents and he said to take it down and ring it up on the cash register, and he said 'here is the dollar, it isn't yours, but I will give it to you,' and I said, 'all

right' and he said, 'go over in the lavatory in the alteration room and wash your face and don't tell anybody anything about it. Just go down and ring up the money and fix up your slips.' Then he asked me if I was coming back on Monday morning, and I said I didn't know." She further testified, that Fleisher said to her in his office, "Do you know what I could do with you? I could have you arrested." That it was over a half hour from the time she went to Fleisher's office until he said, "now you can go"; that while she was in the office she was crying; that she was scared and afraid she would be arrested or "something like that"; that Monday was standing over at the radiator at the side of the room when she first went up; that when she came back after getting the pocketbook, he stood at the door and that the door was closed by him. In answer to the question why she stayed in Fleisher's office, she said, "Because I had to." "Q. Why did you think you had to stay there? A. Because I was afraid to leave. He told me I was a liar and a thief and he told me he could arrest me and I was afraid to leave. Q. Why? A. I was afraid he would arrest me."

On cross-examination she said, when she was told that Fleischer wanted to see her in his office, she was willing to go to see what he wanted, and was satisfied to explain that she did not do what she was accused of doing. "I thought that if I would go he would have me arrested or something else. I don't know what he would do." In answer to the question whether she was satisfied to go down and get her pocketbook from her locker, she said, "Well, I was satisfied to go, but he had to tell me to go. He did tell me to go. He had ordered me to go." "Q. Did he tell you to go and were you satisfied to go? A. Under his orders I was. That is, I wanted to get the pocketbook to prove to him. Q. You were anxious to show him that you hadn't done what he accused you of doing? A. Yes, I wanted to show him. I was afraid if I didn't. He had told me he could have me arrested. Q. Did he tell you that before or afterwards? A. It must have

been before, because that was my intention. That is the reason I went. Q. You wanted Mr. Fleisher to see just what money you had down in your locker? A. Yes, sir. Q. Now how far down did Mr. Monday go with you? A. He went clear down to the locker."

She had previously testified that she did not remember whether it was before or after she went to get her pocket-book that Fleisher told her he could have her arrested.

The plaintiff was corroborated by other witnesses as to much of the abusive language which she testified was used toward her by the defendant, all of which was denied by the defendant and several other witnesses. The plaintiff alone testified that defendant said he could have her arrested. Her other witnesses did not hear this; and defendant, and others testifying in his behalf, positively denied that anything of this kind was said. It also appears that a *non pros* of another suit was taken by the plaintiff when the court was about to direct a verdict for the defendant because of the absence of any such testimony.

This appeal is from a judgment in favor of the plaintiff. There are three bills of exception in the record. The first and second are to rulings of the court on testimony and are clearly unimportant. It is sufficient to say as to them that we find no error in those rulings. The testimony admitted over objections tended to show how the plaintiff came by part of the money which was in her pocket at the time the investigation was made by defendant.

The third is to the granting of plaintiff's first, second, third, and fourth prayers and to the overruling of defendant's special exception to plaintiff's second prayer; and to the rejection of defendant's first, second, third, and seventh prayers, and to the modification of defendant's fourth and sixth prayers.

The *Reporter* will set out all the prayers of defendant, and the granted prayers of the plaintiff, and defendant's special exception to plaintiff's second prayer.

Defendant, by his first prayer, sought to have the case withdrawn from the jury on the ground that under the pleadings there was no evidence legally sufficient to entitle the plaintiff to recover.

Any deprivation of the liberty of another without his consent, whether by violence, threats or otherwise, constitutes an imprisonment. *Bernheimer* v. *Becker,* 102 Md. 254.

And if this is done unlawfully, it is false imprisonment, without regard to whether it is done with or without probable cause. *Lewin* v. *Uzeber,* 65 Md. 341.

That being the law, we cannot say that there was no evidence in this case to go to the jury. Its weight, of course, was for them. The prayer was therefore properly refused.

His third prayer is not in a form which we could approve, and, even if otherwise unobjectionable, was calculated to confuse or mislead the jury. His seventh prayer was misleading without proper qualification.

Plaintiff's first prayer correctly defines "imprisonment" and is unobjectionable. *Bernheimer* v. *Becker, supra.*

Her third prayer presents the case fairly to the jury and requires the finding of every fact necessary to recovery. It was therefore properly granted.

Her fourth prayer is correct as a legal proposition, and was not specially excepted to.

We find no substantial objection to the court's modification of defendant's fourth and sixth prayers. As offered, the fourth denied the right of recovery if the jury should believe from the evidence that defendant was satisfied and willing to come to and remain at defendant's office, and to go to the cloak room and get her pocketbook, and then to return and remain at the office. The addendum merely told the jury that such satisfaction and willingness alone were not sufficient to defeat recovery if they were produced by the belief that if she did not do any of these things she would be arrested or force would be used. The modification simply qualifies the prayer as to the one proposition contained in it

as offered. The majority of the court does not find that the prayer as modified was misleading when considered in connection with the other granted prayers.

His sixth prayer as modified simply told the jury that the facts set out in the original prayer were not *alone* sufficient to defeat recovery, if the detention or restraint of the defendant was accomplished by force or show of force. If there was any tendency in this prayer to mislead, it was cured by the granting of defendant's eighth and ninth prayers.

It remains to consider plaintiff's second and defendant's second prayers.

The special exception to plaintiff's second prayer was properly overruled.

The majority of the court holds that the omission from this prayer of any specific reference to the alleged threat of the defendant, implied from his alleged statement to the plaintiff "that he could have her arrested," and the rejection of defendant's second prayer, which specifically instructed the jury that the finding that defendant made such statement was necessary to recovery, were not prejudicial errors, in view of the full and fair presentation of the law as applicable to all the facts of the case in plaintiff's third prayer and in defendant's eighth and ninth prayers.

The majority of the court finding no prejudicial error in any of the rulings excepted to, the judgment will be affirmed.

*Judgment affirmed, with costs to appellee.*