CLARK'S BROOKLYN PARK, INC. *v.* HRANICKA
AND KOPASEK, ET VIR

[No. 173, September Term, 1966.]

*Decided April 5, 1967.*

The cause was argued before HORNEY, MARBURY, OPPEN-
HEIMER, McWILLIAMS and FINAN, JJ.

*Robert J. Thieblot,* with whom were *Allen, Thieblot & Hughes; T. Benjamin Weston* and *Rollins, Smalkin, Weston & Andrew* on the brief, for appellant.

*Edward B. Rybczynski* for appellees.

FINAN, J., delivered the opinion of the Court.

This is an appeal from judgments of the Circuit Court for Anne Arundel County in two consolidated actions of two counts each for slander and false imprisonment. The jury rendered verdicts of $10,000 in each case in favor of plaintiffs, which were reduced by remittitur to $7,500.

On the afternoon of September 19, 1964, plaintiff Joan Kopasek went shopping in Clark's Brooklyn Park Department Store, owned by defendant, Clark's Brooklyn Park, Inc. Upon arrival she telephoned plaintiff Joyce Hranicka (at that time Joyce Alexandrowicz) and arranged to meet her at the store's snack bar. Joyce left her home dressed in slacks, blouse and sweater. The slacks, according to Joyce's testimony, had been purchased at Clark's some four weeks previously, and had not been washed. The girls met at the snack bar, had a coke and then proceeded to shop throughout the store. Both girls testified that they did not shop in that area of the store containing women's clothing. Each made several purchases and paid for them at the check-out counter.

On the date in question, defendant had two employees at the cashier's counter, Kay Crane, who operated the cash register, and Peggy Kingsley, who wrapped the merchandise. Crane testified that, as she was ringing up a sale for one of the plaintiffs, she was told by Kingsley to look at the slacks that Joyce was wearing. She looked and noticed "a pin ticket on her slacks." She described a "pin ticket" as "a little piece of cardboard or some kind of material like cardboard, and it has Clark's written in red at the top and it is pinned to the merchandise, * * *." Elsie Kisser, a concessionaire selling popcorn, hot dogs, soda and the like in Clark's, testified that she saw a Clark's tag pinned to the top of the slacks Joyce was wearing.

After paying for their purchases, plaintiffs left the store in

normal fashion, went to the parking lot and got into Joan's automobile. Meanwhile, Crane had called the head cashier pursuant to store procedure. According to Crane, the head cashier was instructed to announce a code number over the store's public address system, which would alert the store detective to trouble and bring him to the check-out counter to investigate. Joan and Joyce testified that they had been sitting in the car approximately five minutes when a man, later identified as Mr. Chalk the store detective, rapped on the car window and displayed a badge. He ordered them out of the automobile, with which request they complied, and he asked them whether they had a pink sweater in the car. Joyce testified that she told him that she was wearing a pink sweater. Chalk then entered the vehicle and searched it thoroughly, opening their packages. While this was taking place, Mr. Cohen, the assistant manager of Clark's, had driven his automobile behind the Kopasek vehicle in such a way as to block its exit. This scene attracted, according to Joan's estimate, "every bit of a hundred and fifty," persons including friends of Joan's, who "were just staring." Joyce also estimated the onlookers at 150 persons. One of Joan's friends called her husband and father for her. Joan also testified: "I had heard so many people around the car tell me, if I were you (sic) take your packages back and get your money back, they're accusing you of stealing."

Chalk informed Joyce that she would have to return to the store with him. Joyce refused to do so until she called her father, which she was permitted to do in the presence of Chalk. Joyce's father arrived and he, Joyce, Chalk and Cohen returned to the store at Joyce's father's suggestion. Once in the store they were taken to an area described by Joyce's father as a "lay-a-way warehouse." According to Joyce's testimony she showed them that there were no tags on her slacks and they said they were sorry and admitted a mistake had been made. Joyce's father testified that he asked Mr. Schloss, manager of Clark's, to put a one-page add in the paper to clear Joan's and Joyce's names; this he refused to do. Joyce further testified that, while the discussion with Clark's employees was taking place, "the cashier kept hollering, 'yes, she took those slacks,' after they already told me that I was innocent, and then she

keeps hollering it out when we were walking out the door." Once outside they met Joan, her father, and her husband. They all proceeded back into the store and had further discussions with Cohen and Chalk. Before leaving, Crane, the cashier, told Joyce's father that she had "seen tags on the pants that she [Joyce] wore out of the store."

After defining the law of slander and false imprisonment, the learned trial judge instructed the jury as follows:

"Now also, if you find from the evidence that the defendants had probable cause to go after these girls, detain them, if you find that they did detain them and accuse them, if you so find that, for shoplifting then you're entitled to consider this probable cause in mitigation of damages. In other words, if you feel that the girl, the cashier, and Cohen and Chalk and these other men had probable cause to suspect these girls then you can consider that in mitigation or cutting down the damages in awarding the damages, but you can't consider that as a complete defense to the charge."

The jury's assessments of damages were total, being based on both counts in each case, and defendant made no request for their allocation either before or after they were rendered. Defendant moved for a new trial or in the alternative judgment *non obstante veredicto*. After a hearing, judgment n.o.v. was denied and the lower court further ordered that unless remittiturs of $2,500 were entered in each case the motion for a new trial would be granted; remittiturs in the specified amounts were filed and judgments entered on the verdicts as remitted. This appeal followed.

This appeal presents the following questions for this Court to decide:

1. Is Chapter 269 of the Acts of the General Assembly of 1961 (Art. 27, § 551A Code (1957), titled "Crimes and Punishments", sub-titled "Shoplifting") unconstitutional because the title of the Act is defective and misleading in contravention of Art. III, § 29 of The Constitution of the State of Maryland?

2. Did the trial court commit prejudicial error in instructing the jury that evidence of the existence of probable cause to de-

tain the plaintiffs could not be considered by way of a defense for the defendant but could be considered by way of mitigation of damages.

I

The title of Chapter 269 of the Acts of the General Assembly of 1961 reads as follows:

"AN ACT to add a new Section 551A to Article 27 of the Annotated Code of Maryland (1957 Edition AND 1960 SUPPLEMENT), title 'Crimes and Punishments', to follow immediately after Section 551 thereof and to be under the new sub-title 'Shoplifting', providing a criminal statute for offenses herein defined as 'shoplifting', and relating generally to the offense of shoplifting and other penalties therefor in this State."

The section of the Act providing for the merchants' immunity from civil liability when the detention of the suspected shoplifter is justified on reasonable grounds is § (C) and reads as follows:

"(C) A merchant, agent or employee of the merchant, who detains or causes the arrest of any person shall not be held civilly liable for detention, slander, malicious prosecution, false imprisonment or false arrest of the person so detained or arrested, whether such detention or arrest takes place by such merchant, his agent or employee, provided that in detaining or in causing the arrest of such person, the merchant, agent or employee of the merchant, had at the time of such detention or arrest probable cause to believe that the person committed the crime of shoplifting as defined in section 551A."

That part of § 29 of Article III of the Constitution of the State of Maryland which Chapter 269 purports to contravene reads as follows:

"and every Law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title; * * *."

We cannot improve on the language of Judge Prescott (later Chief Judge) in *Leonardo v. County Comm.*, 214 Md. 287, 134 A. 2d 284 (1957), in his construction of § 29 of Art. III of the Constitution and its application to the titling of statutes, pp. 298-99:

> "Section 29 of Article 3 of the Constitution has been involved in cases before this Court on numerous occasions. It has been included in the last three Constitutions of this State, and its purposes are to prevent the combination in one act of several distinct and incongruous subjects, and to inform the members of the legislature of the nature of the bills introduced, which are usually read to them by their titles only, and to permit the citizens of the State to know of proposed legislation. The general rule of its construction is that every presumption favors the validity of the statute, and reasonable doubt is enough to sustain it. The appellants here assert no claim that the statute embraces more than one subject. The cases arising under this section of the Constitution relating specifically to the requirement that the subject be described in the title may be generally divided into those in which it is contended the title is not sufficiently descriptive, and those where it is claimed the title is misleading. This Court has consistently held that the Constitution is complied with if the title of the legislation *fairly* advises the legislature and the public of the real nature and subject matter of the legislation sought to be enacted. *Shipley v. State*, 201 Md. 96, 102, 93 A. 2d 67. In order to do this, it is unnecessary that the title be an abstract of the text of the proposed statute, nor need mention be made of the means and the methods by which its purpose is to be accomplished. *Bond v. Mayor and C. C.*, 116 Md. 683, 688, 82 A. 978; *Painter v. Mattfeldt*, 119 Md. 466, 87 A. 413."

Judge Evans in the lower court, following the opinion of Chief Judge Manley in *Getz v. Hutzler's Inc.*, reported in the Daily Record of June 15, 1965, ruled that the titling of

Chapter 269 of the Acts of the General Assembly of 1961 was defective, which rendered the Act unconstitutional insofar as its provision regarding the merchant's privilege against civil liability was concerned. Chief Judge Manley in *Getz, supra,* stated:

"The provisions of the portion of the Act quoted above [merchant's privilege against civil liability in the event he had reasonable cause to detain the person suspected of shoplifting] are so foreign to the subject matter stated in the title and are not referred to or mentioned therein in any way, that I am constrained to hold that this portion of the Act violates Section 29 of Article III of the Maryland Constitution referred to above. The body of the Act embraces a subject which is not mentioned or indicated in the title, and the paragraph quoted above grants immunity from civil liability to the merchants or their agents or employees who detain persons who they believe to be shoplifters.

\* \* \*

"There is a veiled reference in the preamble to the fact that merchants should be allowed to detain persons whose actions give rise to a reasonable belief that such persons are engaging in the crime of shoplifting, but this statement in the preamble, in my opinion, does not cure the defect in the title. Anyone would understand from a reading of the title to this law that it only referred to the new crime of shoplifting and the penalties therefor. It would be necessary to read the entire law to realize that the Act also contained provisions applying to civil procedures. This violates the constitutional provision \* \* \*."

We concur with Chief Judge Manley's interpretation of the law as it applies to the titling of the bill. We think he followed the rules of construction as laid down by Judge Prescott in *Leonardo, supra.* This construction has the effect of rendering the provisions contained in § (C) of Chapter 269 void. Section (E) of Chapter 269 contains a severability clause and even if it did not, it would be the duty of the Court to separate the valid from the invalid provisions whenever possible. *Sanza v.*

*Maryland State Board of Censors,* 245 Md. 319, 266 A. 2d 317, 327-28 (1967) ; *Baltimore City v. Stuyvesant Co.,* 226 Md. 379, 390, 174 A. 2d 153, 158-59 (1961). Here the remaining sections of Chapter 269 are not "so connected together in subject-matter, meaning or purpose, that it cannot be presumed the Legislature would have passed the one without the other." *Culp v. Comrs. of Chestertown,* 154 Md. 620, 631, 141 A. 410, 415 (1928) (reaching an opposite result). We hold the remaining provisions of Chapter 269 to be valid.

Maryland Law Review, Vol. 19, p. 28, *et seq.,* contains an interesting casenote on the need for statutory alteration of the common law rule on false imprisonment as it relates to those individuals who are reasonably suspected of shoplifting and the merchant who is seeking to protect his inventory. The estimates set forth therein place the pilferage figure at between $2,000,000 and $3,000,000 annually in Maryland. This no doubt influenced the Legislature in its passage of Chapter 269 which was designed to achieve effective social control of shoplifting; however this Court cannot compromise constitutional safeguards in legislative draftsmanship for reasons of expediency.

## II

Having once determined § (C) of Chapter 269 to be invalid, the lower court could not have given any instruction other than the one given, regarding the role which "probable cause" to detain the suspected shoplifter should play in the deliberation of the jury. In its instructions, the lower court correctly stated the law when in effect it said that; if the merchant and his employees had probable cause to suspect the plaintiffs and thus detain them, this could be considered in mitigation of damages, but not as a defense to the charge of false imprisonment. *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 173-74, 122 A. 2d 457, 460 (1956) ; *Fleisher v. Ensminger,* 140 Md. 604, 620, 118 A. 153, 159 (1922).

The transcript shows that testimony was admitted in evidence from which probable cause for detention could be adduced and certainly argued to the jury. The defendant in its brief stated:

> "On the facts of this case and even on the necessarily incomplete testimony in it, a jury could have

found that the Appellant's investigation was premised on a reasonable belief that the Appellees, Joan Kopasek and Joyce Hranicka, were guilty of the crime of shoplifting, that the investigation undertaken by Appellant was for a reasonable time and in a reasonable manner * * *."

The lower court, as we have heretofore stated, provided in its instructions to the jury that "probable cause" could be considered for the purpose of mitigation of damages. This was correct because the court also instructed the jury, that if it found the element of malice attending the acts of false imprisonment or slander, it could take that into consideration in any award for punitive damages which it might make; accordingly, it was proper for the court to instruct the jury that it could also take into consideration the existence of "probable cause" because the presence of "probable cause" would have a direct bearing on the quality of malice, if it found that any existed.

It would have been error for the court to have allowed it to be considered for purposes of defense.

*Judgments affirmed, with costs.*