Ophelia **ROBERTS**

v.

The **HECHT COMPANY.**

Civ. No. 18181.

United States District Court
D. Maryland.

March 6, 1968.

---

Harvey Rosenberg, Silver Spring, Md., for plaintiff.

Herbert F. Murray and Robert E. Powell, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

The Court of Appeals of Maryland has recently reiterated the Maryland rule that to support an action for false imprisonment, there must be a deprivation of the liberty of another without his consent and without legal justification, and that probable cause may be considered in mitigation of damages, but not as a defense to the charge. Clark's Brooklyn Park, Inc. v. Hranicka, 246 Md. 178, 227 A.2d 726 (1967); Safeway Stores, Inc. v. Barrack, 210 Md. 168, 122 A.2d 457 (1956); Fleisher v. Ensminger, 140 Md. 604, 118 A. 153 (1922). This diversity action tried to the court without a jury, raises the question whether the facts found by the court from conflicting evidence amount to legal justification for the temporary detention on the premises of a person suspected of shoplifting for the time necessary for a reasonable investigation of the facts.

In the summer of 1966 plaintiff was employed as a Grants Assistant by the Public Health Service of the Department of Health, Education and Welfare. The building where she worked was on Eastern Avenue, a ten minute drive from the Hecht Company store in Silver Spring, Maryland. On Friday, July 29, 1966, at about 12:30 p. m., plaintiff drove her automobile to the Hecht Company store and went to the women's sportswear department. A month or two before she had purchased at the same store a three-piece "bikini set", consisting of a bra, a "bikini" and a pair of pants, low-waisted, knee length, thin, tight, with ruffles at the knees. The Court is advised that such a garment is known as a "hip-hugger". The pants were blue-green in color, and plaintiff wanted to see if she could find a "top" or blouse to go with them.

When she entered the store, she was carrying the pants either in a paper bag or in her purse, which was about a foot long.[1] Plaintiff spent fifteen minutes or so in the sportswear department, selecting from the racks four or five knit blouses and a pair or two of slacks, all of which she took into a fitting room. There were only one or two salesgirls in the department at that hour, and customers generally select, unaided, the garments they wish to try on and take the garments for that purpose into one of the small fitting rooms, of which there are a dozen or so.

Two female store detectives first noticed plaintiff while she was taking garments off the rack. They did not see the pants or the paper bag, which may have been in the handbag or under the garments which plaintiff had taken from the racks. The detectives became suspicious of plaintiff and decided to watch what she did in the fitting room, which could easily be done through vents in the walls which separate one fitting room from those on each side of it. When the detectives began to observe plaintiff in the fitting room, she was putting on the pants preparatory to trying on the several tops or blouses. The blouses were not of a length or material which would ordinarily be thought appropriate to go with the pants, but *de gustibus non est disputandum*. None of the tops or blouses

---

1. The pants may have been in the paper bag and the paper bag in the handbag.

pleased plaintiff, she put them and the slacks back on the hangers, and put the pants into the paper bag, which she took out of her handbag or appeared to take out of her handbag.

Plaintiff then left the fitting room, replaced the blouses and slacks on their racks and left the department, carrying her handbag and the paper bag containing the pants. She walked slowly around the floor for 15 or 20 minutes, examining and handling jewelry and other merchandise. Plaintiff testified that she purchased a pair of earrings. The detectives denied this, but the records show that plaintiff did purchase earrings on that day, and the Court accepts plaintiff's testimony that she purchased them on her way out. The detectives noticed that plaintiff had left an empty hanger in the fitting room; they had seen no tags on the pants, and found none on the floor of the fitting room.[2]

The detectives discussed the matter with the chief security officer, and it was decided that one of the detectives, Mrs. Williams, should stop plaintiff as she was leaving the store and inquire about the contents of the paper bag. Double doors lead from the store onto Fenton Street, and as plaintiff put her hand on the second door Mrs. Williams took plaintiff's arm, displayed her deputy sheriff's badge,[3] and asked plaintiff to come with her to the office to explain the contents of the paper bag. Plaintiff did not demur, but asked Mrs. Williams to let go of her arm, saying that she would accompany her to the office. Mrs. Williams complied with plaintiff's request, and she and the other detective walked on either side of plaintiff up the center aisle to the escalator. There were relatively few people in the store at that time, probably fewer than plaintiff believed but more than the detectives admitted. Plaintiff naturally felt they were all looking at her, and she heard a salesgirl say: "They've got her". Plaintiff saw no one in the store whom she recognized. At the escalator the three women were joined by the chief security officer, who accompanied them down the escalator and across the lower floor to the office. Plaintiff sat in a chair by the desk; the door was kept open; the store employees looked in the paper bag, examined the pants, saw that they had no tags on them, and when plaintiff told them she had purchased the pants at the store as part of a three-piece set a month or two before, checked the records and found that plaintiff had indeed purchased a three-piece set, but could not tell from the records whether the pants had actually been a part of that sale. Upon learning this, the chief security officer stated that he would give plaintiff the benefit of the doubt, apologized to her, and told her that she might go. The store employees were polite throughout the incident. Plaintiff left the store, returned to work and explained to her supervisor why she was late. She was officially entitled to a half-hour for lunch, but customarily took a full hour, with the approval of her supervisor. In fact, she would have taken well over an hour for lunch even if she had not been detained.

Plaintiff had had an atopic dermatitis for a year or so and had been regularly receiving injections from her doctor

---

2. They testified persuasively that customers frequently remove tags before trying on garments to avoid being stuck by the pins, and because there is so much self-service in the department, the tags are not always replaced promptly.

3. A deputy sheriff in Montgomery County has authority to make an arrest in the area for which she is appointed. Maryland Constitution, Art. IV, sec. 44; Anno. Code of Maryland, Art. 87, secs. 6, 8; Laws of Maryland of 1939, ch. 491; Montgomery County Code, 1965, sec. 2–100; 47 Am.Jur. (Sheriffs, Police & Constables), secs. 26, 154; see also 5 Am.Jur.2d (Arrest, secs. 24, 34, 35); Baltimore & O. R. Co. v. Cain, 81 Md. 87, 31 A. 801, 28 L.R.A. 688 (1895); Mayor, etc. of Baltimore v. State ex rel. Board of Police of City of Baltimore, 15 Md. 376 (1859). No arrest was made in this case. Since the incident the store detectives have been appointed special policemen, under Anno. Code of Maryland, Art. 41, secs. 60 et seq.

every four or five weeks. She had no immediate ill effects from the incident, and went routinely to her doctor several weeks thereafter. He increased the medication, and later, when the dermatitis and swelling in her leg became more severe, she was forced to spend three weeks in the hospital and to take four more weeks off work before it cleared up. The doctor was not called to testify and plaintiff's attorney made no effort to take his deposition. The Court finds that plaintiff has failed to prove any connection between the incident and her dermatitis and hospitalization.

Shoplifting has become an increasingly serious problem. In 1961 the General Assembly of Maryland adopted a statute dealing with shoplifting, which provided both for criminal sanctions and for the merchant's immunity from civil liability when the merchant had probable cause to believe that the person had committed the crime of shoplifting.[4] However, the civil immunity provisions were held invalid because of a defect in the title of the Act. Clark's Brooklyn Park v. Hranicka, 246 Md. 178, 227 A.2d 726 (1967).

The Restatement of the Law, Torts, Second, § 120A, reads:

"Temporary Detention for Investigation

"One who reasonably believes that another has tortiously taken a chattel upon his premises, or has failed to make due cash payment for a chattel purchased or services rendered there, is privileged, without arresting the other, to detain him on the premises for the time necessary for a reasonable investigation of the facts." [5]

The rule stated in § 120A of the Restatement has been generally followed. In Montgomery Ward & Co. v. Freeman, 199 F.2d 720, 723–724 (4 Cir. 1952), Judge Soper referred to "the rule of law in effect in Virginia and elsewhere that if an owner, acting in the exercise of his right to protect his property, has reasonable grounds to believe that another is stealing it, he is justified in detaining the suspect for a reasonable length of time for the purpose of investigation in a reasonable manner." See also Teel v. May Department Stores Co., 348 Mo. 696, 155 S.W.2d 74, 137 A.L.R. 495 (1941), and other cases cited by Judge Soper and in the appendix to Restatement, Torts, Second, § 120A.

This Court believes that the rule set out in § 120A of the Restatement would be adopted by the Court of Appeals of Maryland if it were called to the Court's attention in a proper case.[6] But since it was not adopted by that court in Clark's Brooklyn Park v. Hranicka, decided last year, this Court cannot say that it is now the law of Maryland.

■ What constitutes "justification" for the temporary detention of a suspected shoplifter under the Maryland law as it now stands is not clear. Probable cause is ordinarily an important element of such justification. Teel v. May Department Stores Co., supra. See also cases cited in the appendix to Restatement, Torts, Second, § 120A; Isaiah v. Great Atlantic & Pacific Tea Co., 111

---

4. Section (c) of Ch. 269 of the Acts of 1961, Code, Art. 27, sec. 551A, reads as follows:

   "*Civil liability for detention or arrest.*—A merchant, agent or employee of the merchant, who detains or causes the arrest of any person shall not be held civilly liable for detention, slander, malicious prosecution, false imprisonment or false arrest of the person so detained or arrested, whether such detention or arrest takes place by such merchant, his agent or employee, provided that in detaining or in causing the arrest of such person, the merchant, agent or employee of the merchant, had at the time of such detention or arrest probable cause to believe that the person committed the crime of shoplifting as defined in § 551A."

5. A caveat thereto states: "The Institute expresses no opinion as to whether there may be circumstances under which this privilege may extend to the detention of one who has left the premises but is in their immediate vicinity."

6. It was not referred to in the briefs in Clark's Brooklyn Park v. Hranicka.

Ohio App. 537, 174 N.E.2d 128, 186 A.L. R.2d 430 (1962); 137 A.L.R. 495 (1942); Jacques v. Childs Dining Hall Co., 244 Mass. 438, 138 N.E. 843, 26 A.L.R. 1329 (1923). Where the probable cause is strong enough, it may be equivalent to justification, as where the merchant or his duly authorized employee sees the suspect take a garment off a rack and put it in her bag. In the instant case the detectives did not see plaintiff take the pants off a rack or off a table, and did not see any tags on the pants while plaintiff was in the fitting room. Nevertheless, plaintiff's actions in the sportswear department and in the fitting room, particularly putting the pants in a paper bag, justified suspicion on the part of the detectives.

The Court finds and concludes that there was probable cause for detaining plaintiff on the premises for the time necessary to make a reasonable investigation of the facts, as the term "probable cause" is used in the Maryland cases. The Court finds and concludes that there was no justification for such detention, as the term "justification" is used in the Maryland cases. Under the present Maryland law, the probable cause may be considered only in mitigation of damages. No malice has been shown.

The one count complaint in this case concluded: "All of the actions hereinbefore mentioned were to the detriment of the plaintiff and injured plaintiff in her good name and reputation, as well as restricting the plaintiff's movements. In addition, the aforesaid actions of defendant and their agents and/or servants and/or employees was an invasion of the right of privacy of the plaintiff." Except insofar as some invasion of privacy may be involved in every action for false imprisonment, there has been no such invasion of privacy in this case as would give rise to an action for damages.

■ The Court finds for the plaintiff and assesses the damages at $500.00. Judgment will be entered for that amount, with costs.