Rockingham, }
 Feb. 2, 1904. }

### Cordner v. Boston & Maine Railroad.

A railroad company is not liable for a wrongful arrest made by its servant in his capacity as railroad police unless it directed or ratified the act, or unless the officer, in making the arrest, was engaged in the business of the corporation and acted within the scope of his employment.

A servant of a railroad company, who is appointed a police officer under section 29, chapter 160, Public Statutes, has authority to arrest offenders upon the premises and cars of the corporation by which he is employed, upon view of offences there committed.

Trespass, for assault and false imprisonment. Upon a trial by jury at the October term, 1902, of the superior court, *Young*, J., presiding, a nonsuit was ordered, subject to the plaintiff's exception.

The testimony tended to prove the following facts: The defendants operate an electric street railway between Portsmouth and Exeter. One Hoyt was a conductor upon this railway. A petition in the name of the defendants, signed "Boston & Maine Railroad, by Arthur F. Howard, assistant superintendent of the Portsmouth Electric Street Railway," was presented to the mayor and aldermen of the city of Portsmouth on August 1, 1901, for the appointment of certain of their employees upon the street railway—Hoyt among them—as special police officers, to act as railroad police for the purposes and with the powers prescribed by chapter 160 of the Public Statutes. The petition was laid upon the table by the mayor and aldermen, and was not further acted upon. The clerk of the defendant corporation never filed with the clerk of the city a copy of any appointment of Hoyt as such officer. Hoyt was sworn by the city clerk, under an arrangement made by the assistant superintendent of the street railway for swearing as special police officers all its conductors who were citizens of Portsmouth. The railroad furnished Hoyt a badge, inscribed "Portsmouth Electric Railway, Special Police, No. 12." On September 6, 1901, Hoyt worked for the defendants as conductor between the hours of seven and eight o'clock in the morning, from half-past twelve to half-past two in the afternoon, and from half-past six to half-past eleven in the evening. He was not on duty nor subject to the defendants' orders during the remainder of the day. About fifteen minutes after eight o'clock in the forenoon, while he was paying to the defendants' ticket agent, through the window of the ticket office in their station at Portsmouth, his collections of the day previous, he missed two silver dollars which

he had placed on the shelf of the window; and he suspected the plaintiff, who approached the window to make an inquiry, of taking them.   He immediately reported the loss to a clerk of the assistant superintendent of the street railway and to the city marshal of Portsmouth.   He went in search of the plaintiff for the purpose of recovering the money, and between nine and ten o'clock saw him upon an electric car destined to Exeter, and got upon the car and told him of his suspicion.   The plaintiff denying that he had taken the money, Hoyt telephoned the clerk above mentioned that he had found the plaintiff, and asked the clerk to inquire of the city marshal if he had authority to bring the plaintiff back to Portsmouth.   The clerk communicated with the marshal, and by his instruction directed Hoyt to bring the plaintiff to his office.   The plaintiff objecting, Hoyt exhibited his badge and told the plaintiff he would be obliged to return, whereupon he accompanied Hoyt to the marshal's office.   After a brief conference with the marshal, the plaintiff was allowed to go.   The money has not been recovered, and its loss fell upon Hoyt.   The plaintiff testified that he did not take it.   The action was based upon Hoyt's acts.

*Ernest L. Guptill*, for the plaintiff.

*John S. H. Frink* and *John W. Kelley*, for the defendants.

Chase, J.   The mere fact that Hoyt was the defendants' servant is not sufficient to make the defendants answerable for his arrest of the plaintiff.   They are not liable unless they directed him to make the arrest, or unless in doing so he was engaged in their business and acting within the scope of his employment as their servant, or unless they have ratified his act.   *Wilson* v. *Peverly*, 2 N. H. 548; *Grimes* v. *Keene*, 52 N. H. 330; *Andrews* v. *Green*, 62 N. H. 436; *Searle* v. *Parke*, 68 N. H. 311; *Rowell* v. *Railroad*, 68 N. H. 358; *Turley* v. *Railroad*, 70 N. H. 348. The first of these contingencies may be dismissed with the remark that it appears that he acted under the direction of the city marshal, instead of the defendants.   The record contains no fact tending to show that the defendants have ratified the arrest as an act done in their behalf.   The question remaining is, whether impartial and fair-minded men, upon a consideration of the facts, might reasonably find that Hoyt, in making the arrest, was engaged in the defendants' business and acting within the scope of his employment.   His particular employment was that of conductor upon the defendants' street railway, but he was not on duty at the time of the arrest; in fact, was not subject to the

defendants' orders. The arrest was not made upon view of the offence, but some time after its commission. Who the offender was, was matter of suspicion merely. Though the money alleged to have been stolen belonged to the defendants, the loss fell upon Hoyt. The defendants had no interest to have the arrest made, other than such as Hoyt or any other member of the community had. It cannot be assumed that by the employment of Hoyt as conductor it was understood that he should arrest a suspected person in behalf of his employers under such circumstances. It would be no more within the scope of his service to do this than it would be to bring an action of trover for the missing coins.

In addition to his employment as conductor, it appears that an attempt was made by the assistant superintendent of the street railway to have him, with other employees, appointed railroad police officer under the provisions of section 29, chapter 160, Public Statutes. Whether the attempt was authorized by the defendant corporation does not appear. It failed from some cause; but notwithstanding the failure, Hoyt was sworn as police officer under an arrangement made for the purpose by the assistant superintendent, and was furnished with a badge of office. Assuming that this constituted him an officer *de facto* (*Jewell* v. *Gilbert*, 64 N. H. 13), or if not, that the defendants are estopped to deny that he was such officer and was appointed upon their petition, how does the fact affect the scope of his service for the defendants? Manifestly, it could not modify or enlarge the ordinary service of the employee beyond the inclusion within the service of a performance of the duties imposed by law upon railroad police officers; and it is doubtful if it would have effect even to that extent. *Healey* v. *Lothrop*, 171 Mass. 263; *Hardy* v. *Railroad*, 58 Ill. App. 278. These duties are set forth in the statute in the following terms: "Railroad police officers may preserve order within and about the premises and upon the cars of the corporation upon whose petition they were appointed; they may arrest without a warrant all idle, intoxicated, or disorderly persons frequenting such premises or cars, and obstructing or annoying, by their presence or conduct, the traveling public using the same, and all persons committing thereon any offence known to the laws of the state, and may take the persons so arrested to the nearest police station, or other place of lawful detention in the county where the offence was committed." P. S., c. 160, s. 32. The object of the statute is the preservation of order upon and about the premises and upon the cars of railroad corporations. The duties prescribed and the powers conferred are confined to those places, and relate solely to offences there committed. The object is to be attained by taking notice of offences immediately

upon their commission. The employees of the corporation are clothed with the powers of police officers because they are likely to be present at the time police services are needed. The provision that the arrest may be made without warrant shows that the circumstances in view of the lawmakers were those which will justify such an arrest. In short, the statute confers authority upon railroad police officers to arrest offenders upon the premises and cars of their corporations, upon view of offences there committed. Even if Hoyt must be regarded as a railroad police officer, so far as the defendants are concerned, his arrest of the plaintiff was an act that was outside the duties of the office. The statute did not make it his duty, nor authorize him, to arrest without warrant a person for an offence which the person was suspected of having committed at an earlier time, though it was committed upon the defendants' premises and the suspected offender was at the time of the arrest a passenger upon one of their cars. Such cases are governed by the provisions of law relating to offences generally, rather than by the provisions made for the special protection of the traveling public. There is nothing in the record tending to show that it was within the scope of Hoyt's service for the defendants to make the arrest under consideration.

*Exception overruled.*

YOUNG, J., did not sit: the others concurred.