W. C. HUDSON *v.* PHILADELPHIA LIFE INS. Co. (No. 1)*

*(Jackson.* April Term, 1926.)

1. **MALICIOUS PROSECUTION.** Liability of principal for act of agent in instituting malicious prosecution depends on scope of agent's employment.

Liability of a principal for agent's act in instituting a malicious prosecution or causing a false arrest or imprisonment is dependent on whether principal previously authorized and subsequently ratified it, or whether act was within scope of agent's employment. *pp.* 702-705.)

Cases cited and approved: Loveman Co. v. Bayless, 160 S. W., 841; Daniel v. Atlantic Coast Line Railroad Co., 48 S. E., 816; Cleveland Co-operative Stove Co. v. Koch, 37 Ill. App., 595; Walker v. Culman, 59 P., 606; Govaski v. Douney, 59 N. W., 167; Gillett v. Mo. Valley R. Co., 55 Mo., 315; Levey v. Fargo, 1 Nev., 415; Cordner v. Boston, etc., R. Co., 57 A., 234; Lubliner v. Tiffany, 66 N. Y. S., 659; McKay v. Hudson River Line, 67 N. Y. S., 651; Tryon v. Pingree,

Hudson v. Philadelphia Life Ins. Co.

70 N. W., 905; Gambill v. Cargo, 43 So., 866; Bernheimer v. Becker, 62 A., 526; Mertens v. Mueller, 87 A., 501; Cascarella v. National Grocer Co., 114 N. W., 857; Equitable Life Assur. Soc. v. Lesler, 110 S. W., 499; Houston, etc., R. Co. v. Roberson, 138 S. W., 823; Russell v. Palatine Ins. Co., 63 So., 644; Thompson v. Bank, 32 N. B., 335; Springfield Engine & Threshing Co. v. Green, 25 Ill. App., 106; Mulligan v. Railway Co., 29 N. E. 952; Railroad Co. v. Brewer, 28 A., 615; Little Rock Traction, etc., Co. v. Walker, 45 S. W., 57. Cases cited and distinguished: Willis v. Railroad Co., 26 S. E., 785; Reddit v. Singer Mfg. Co., 32 S. E., 392.

2. **MALICIOUS PROSECUTION.** General insurance agent held without authority to institute criminal prosecution so as to bind principal.

It is not within scope of authority, either expressed or implied, of state agent of insurance company having authority to appoint and supervise agents and to collect premiums, to institute criminal prosecution so as to bind his principal. (*Post, pp.* 705, 706.) ·

3. **PRINCIPAL AND AGENT.** Agent's declarations that he was authorized by principal to institute criminal prosecutions against plaintiff held inadmissible, where not made until after prosecutions were instituted.

Declarations of agent before justice of peace that he was authorized by his principal to institute criminal prosecutions against plaintiff *held* inadmissible, where they were not made by agent when warrants were sworn out and prosecutions instituted against plaintiff, but sometime afterwards. (*Post, pp.* 706-709.)

Cases cited and approved: Cheek v. Wheatley, 30 Tenn., 556; Cobb, Welch & Co. v. Johnson, 34 Tenn., 73; Frank v. Wright, 205 S. W., 434; Gavin v. Walker, 82 Tenn., 643; Moore v. Davis, 51 Heisk., 540; Railroad v. Byrley, 153 S. W., 36; Paulton et al. v. Keith, 49 A., 635.

Cases cited and distinguished: So. Life Ins. Co. v. Booker, 56 Tenn., 606; Moore v. Bettis, 30 Tenn., 67.

4. **MALICIOUS PROSECUTION.** Evidence held not to show defendant authorized prosecutions.

In action for damages for malicious prosecution, evidence *held*
not' to show that defendant authorized criminal prosecutions
against plaintiff.  (*Post, p.* 709.)

*Headnotes 1.  Malicious Prosecution, 38 C. J., Section 107; 2. Mali-
cious Prosecution, 38 C. J., Section 108; 3. Agency, 2 C. J.,·Section 695;
4. Malicious Prosecution, 38 C. J., Section 189.

FROM CHESTER.

Appeal from the Circuit Court of Chester County to
the Court of Civil Appeals, and by *certiorari* to the Court
of Civil Appeals from the Supreme Court.—HON. N. R.
BARHAM, Judge.

GALBRAITH & MITCHELL and ROSS & BALLEW, for plain-
tiff.

ANDERSON, ROTHROCK & CARROLL, SUE S. WHITE, and
WALTER STOKES, for defendant.

MR. JUSTICE HALL delivered the opinion of the Court.

W. C. Hudson, who will hereinafter be referred to as
plaintiff, sued the Philadelphia Life Insurance Company,
who will hereinafter be referred to as defendant, and
one W. H. Baxley, in the circuit court of Chester county,
to recover damages for the alleged malicious prosecution
of him before a justice of the peace for Perry county,
Tenn., on eight State warrants, charging him with forg-
ery, breach of trust, larceny, and embezzlement.

Baxley swore out these warrants against the plaintiff,
and he and defendant were jointly sued on the theory

that, in swearing out the warrants, he was acting in his own behalf, and as agent of the defendant, and within the scope of his authority.

The defendant and Baxley filed separate pleas of the general issue to the plaintiff's declaration, and, upon the issues thus joined, the case was tried before the court and a jury at the June term, 1924. Baxley did not appear at the trial either in person or by counsel, and the case was proceeded with *ex parte* as to him.

The jury returned a verdict in favor of the plaintiff and against the insurance company for $4,000. The jury found in favor of the defendant Baxley and against the plaintiff.

The plaintiff did not move for a new trial as to the defendant Baxley, but accepted the verdict in his favor.

The defendant insurance company moved for a new trial in its behalf upon a number of grounds, which motion having been heard and overruled by the court, it then made a motion in arrest of judgment, which was likewise overruled. Judgment being entered in accordance with the verdict of the jury against said defendant, it appealed to the court of appeals and assigned errors. That court reversed the judgment of the trial court; sustained defendant's motion for a directed verdict, and dismissed plaintiff's suit. While the opinion of the court of appeals does not expressly show that it sustained the motion of the defendant insurance company for a directed verdict, it does order the plaintiff's suit dismissed, and judgment was entered according, so the necessary effect of what the court did amounted to this.

The plaintiff has filed his petition in this court for

writ of *certiorari* seeking a review and reversal of the judgment of the court of appeals.

The defendant insurance company has also filed a petition for writ of *certiorari* seeking to have reviewed the action of the court of appeals in overruling a number of assignments of error made in that court challenging the correctness of the trial court's action in admitting proof at the trial, over its objection, of certain declarations made by the defendant Baxley at the trial before the justice of the peace on said criminal warrants sworn out against the plaintiff by the defendant Baxley. Both petitions and writs having been granted, and the case elaborately and ably argued, the court will now proceed to a disposition of the questions presented.

It is necessary, to a proper understanding of the case, to make a statement showing the relation of the parties to this litigation. The defendant insurance company is a foreign corporation engaged in the business of writing life insurance, with its home office in the city of Philadelphia, and the defendant Baxley was its supervisor for Tennessee, Kentucky, and Alabama, with offices at Nashville, Tenn., and was vested with authority to appoint agents in his territory for said company, receive application for insurance, collect premiums, settle with and have supervision over the agents appointed by him. Baxley's agency was designated and known as the "Philadelphia Life Insurance Agency for Tennessee, Kentucky and Alabama," and will hereinafter be referred to as the Philadelphia Life Insurance Agency.

Under the contract between the Philadelphia Life Insurance Agency and the defendant company, either party thereto, with the approval of the other, had authority to

appoint agents for said agency in the territory covered by said contract; but in all cases, and without exception, the said Philadelphia Life Insurance Agency was responsible to the defendant company for the premiums, or its portion thereof, on insurance policies written by such agents.

Pursuant to the provisions of its contract with the Philadelphia Life Insurance Agency, and with the approval of said agency, defendant company appointed one T. G. Morgan as its agent to solicit applications for life insurance in certain counties in Tennessee, said Morgan thereby becoming a general soliciting agent for the defendant company in his territory. Under his contract Morgan had, subject to the approval of the defendant company, the authority to appoint sub-agents to work for him. Morgan, however, reported all business done by him or his sub-agents direct to the Philadelphia Life Insurance Agency, which was responsible to the company for the premiums on all business written by Morgan or his sub-agents.

On January 2, 1922, Morgan, with the approval of the defendant company and the Philadelphia Life Insurance Agency, entered into a contract with the plaintiff, whereby he appointed plaintiff his agent for the same territory covered by his (Morgan's) contract. Under this appointment plaintiff reported to Morgan, and was responsible to Morgan, who was in turn responsible to the Philadelphia Life Insurance Agency for the defendant company's portion of premiums on business written by the plaintiff.

The defendant company, under no circumstances, accepted notes for the first year's premiums on applica-

tions for policies written by either Morgan or the plaintiff, but, by the terms of its contracts and its rules, required that its proportion of all premiums be accounted for in cash; that if an agent accepted a note for a premium he did so at his own risk, and was required to account to the company in cash for its share thereof, notwithstanding the fact that a note was taken.

On the class of business written by Morgan and the plaintiff the defendant company received an average of thirty-five per cent. of the first year's premiums, and the agent retained sixty-five per cent. as his commission. The agent was required to collect premiums at the time the applications were taken, and to remit the company's share of such premiums, along with the applications, to the Philadelphia Life Insurance Agency at Nashville, who would transmit them, together with the applications, to the defendant company, and these premiums and applications were taken subject to the approval or disapproval of the defendant company at its home office. The usual course of business was that when an application was taken by the plaintiff it was reported to Morgan, who forwarded it, together with the company's proportion of the premium thereon, to the Philadelphia Life Insurance Agency at Nashville, who in turn forwarded the application to the company at Philadelphia, and was responsible to the company for the premium received from the plaintiff. If the application were accepted by the defendant company, the policy applied for was issued and was returned to the Philadelphia Life Insurance Agency to be delivered to the applicant. In case the application was rejected, notice of this fact, together with the amount remitted to the defendant company as its

share of the premium thereon, with instructions to the Philadelphia Life Insurance Agency to refund to the applicant the premium collected, was sent by the company to said agency, who forwarded it to Morgan, who was supposed to transmit same to the plaintiff. Accompanying this notice of rejection was a receipt form to be executed by the rejected applicant, when his premium was returned to him, acknowledging its return. If the rejected application showed that a note instead of cash had been taken therewith by the agent for the first premium, the receipt form was prepared accordingly and sent to the Philadelphia Life Insurance Agency along with the notice of rejection, together with the cash which had been remitted to the company, and these were forwarded by said agency to Morgan, who would in turn deliver them to the agent accepting the application, and he was directed to return the note and cash paid to the applicant, and have the receipt executed by the applicant, and Morgan would forward to the Philadelphia Life Insurance Agency said signed receipt, who in turn would forward it to the defendant company.

It appears that, without regard to the class of policies that were written, both plaintiff and Morgan frequently accepted notes from the applicants for the first year's premiums, but being bound under their contracts to remit in cash to the Philadelphia Life Insurance Agency the company's share of such premiums, along with the applications, they made an arrangement with Baxley whereby they would discount the notes so taken to him, or put them up as collateral security to loans obtained, before ascertaining whether the applications would be accepted or rejected by the company; that in this way

they would obtain money on said notes, remitting through the regular channel the company's thirty-five per cent. of the premiums and keeping the remainder.  Many of these notes Baxley discounted personally, and others they were enabled, with Baxley's aid, to pledge as collateral for loans obtained by them from the Broadway National Bank at Nashville.

In some cases where the applicant's note had been taken for the premium, and the application was rejected by the company, the note having already been negotiated by the plaintiff he was unable and made no effort to return it to the applicant and kept the company's share of the premium which had been remitted with the applications, and which had been returned to him along with the notice of rejection, and notwithstanding the note was not returned to the rejected applicant, in some instances, a receipt purporting to have been executed by the applicant, acknowledging return of the note, was received by the defendant company through the Philadelphia Life Insurance Agency.

This practice of negotiating premium notes by Morgan and the plaintiff continued until the plaintiff and Morgan became indebted to Baxley personally and as individuals to the extent of from $2,800 to $3,000, and to the Broadway National Bank at Nashville to the extent of $5,000.  For a part of the indebtedness held by the bank against Morgan Baxley was personally bound as surety or indorser.

Being thus indebted, the plaintiff and Morgan, in November, 1922, severed their connection with the defendant company and removed to the State of Arkansas.

Thereafter, Baxley endeavored, first by persuasion and then threats, to prosecute Morgan; to prevail upon Morgan's brother, H. A. Morgan, who lived at Henderson, Tenn., to satisfy Morgan's indebtedness to him, and failing in this effort he, in June, 1923, swore out the warrants averred on in the declaration for the arrest of Morgan and the plaintiff, and caused them to be arrested on said warrants.

The undisputed evidence shows that at the time this was done by Baxley the plaintiff was not indebted to the defendant company for any amount, nor was the defendant company claiming that he was indebted to it for any sum.

To these facts both Morgan and the plaintiff expressly testified on the trial in the circuit court, and their testimony stands in the record uncontradicted.

The plaintiff was tried, along with Morgan, before a justice of the peace for Perry county on all warrants sworn out against them by Baxley, which trial resulted in the cases being dismissed, and the plaintiff and Morgan were both discharged on each and every one of them.

Thereafter, the present suit was filed by the plaintiff in the circuit court of Chester county, where he lived, against Baxley and the defendant company.

As before stated, Baxley, after filing his plea of the general issue, abandoned the case and did not appear at the trial in person or by counsel.

On the trial the defendant company introduced no evidence, but rested its case at the conclusion of the plaintiff's evidence, and moved the court for a directed verdict in its favor, which motion was overruled, and the case submitted to the jury by the court with the result

hereinbefore stated; and, as hereinbefore stated, on ap-
peal by the defendant company from the judgment ren-
dered against it, in accordance with the verdict of the
jury, the court of appeals sustained its motion for a di-
rected verdict, and dismissed the suit.

The court of appeals, in reversing the judgment against
the defendant company, was of the opinion that, under
the facts proven, the doctrine of *respondeat superior* ap-
plied, and as the verdict of the jury was in favor of Bax-
ley and against the plaintiff, this operated as an exon-
eration of the defendant company, and hence sustained
said defendant company's motion for a directed verdict,
and dismissed plaintiff's suit on the authority of *Love-
man Co.* v. *Bayless*, 160 S. W., 841, 128 Tenn., 307, Ann.
Cas., 1915C, 187, and this action of the court of appeals
is assigned as error in this court.

The defendant company has assigned as error in this
court the action of the court of appeals in overruling its
assignments of error in that court challenging the action
of the trial judge in admitting in evidence before the jury
on the trial proof of certain declarations made by Baxley
on the trial of the criminal charges before the justice of
the peace stated in the warrants sworn out against the
plaintiff by Baxley, as the agent of the defendant com-
pany, tending to show that he had authority from the
defendant company to swear out said warrants against
the plaintiff and prosecute him for said alleged offense.

Proof of these declarations by Baxley were excepted
to by the defendant company on the ground that it had
not been shown that the relation of agent and principal
existed between Baxley and the defendant company at
the time the warrants were sworn out and the prosecu-

tions begun; that it had not been shown that Baxley acted within the scope of his authority as agent of the defendant company at the time he swore out said warrants and instituted said prosecutions.

The rule is well settled that the liability of a principal for the act of his agent in instituting a malicious prosecution or causing a false arrest or imprisonment is dependent upon whether the principal previously authorized or subsequently ratified it, or whether the act was within the scope of the agent's employment. If previously authorized or subsequently ratified, or if within the scope of the agent's employment, the principal is liable; otherwise he is not. *Daniel* v. *Atlantic Coast Line Railroad Co.*, 48 S. E., 816, 136 N. C., 517, 67 L. R. A., 455, 1 Ann. Cas., 718; *Cleveland Co-operative Stove Co.* v. *Koch*, 37 Ill. App., 595; *Walker* v. *Culman*, 59 P., 606, 9 Kan. App., 691; *Govaski* v. *Downey*, 59 N. W., 167, 100 Mich., 429; *Gillett* v. *Missouri Valley R. Co.*, 55 Mo., 315, 17 Am. Rep., 653; *Levey* v. *Fargo*, 1 Nev., 415; *Cordner* v. *Boston, etc., R. Co.*, 57 A., 234, 72 N. H., 413; *Lubliner* v. *Tiffany*, 66 N. Y. S., 659, 54 App. Div., 326; *McKay* v. *Hudson River Line*, 67 N. Y. S., 651, 56 App. Div., 201; *Tryon* v. *Pingree*, 70 N. W., 905, 112 Mich., 338, 67 Am. St. Rep., 398; *Gambill* v. *Cargo*, 43 So., 866, 151 Ala., 421; *Bernheimer* v. *Becker*, 62 A., 526, 102 Md., 250, 3 L. R. A. (N. S.), 221, 111 Am. St. Rep., 356; *Mertens* v. *Mueller*, 87 A., 501, 119 Md., 525; *Cascarella* v. *National Grocer Co.*, 114 N. W., 857, 151 Mich., 15; *Equitable Life Assur. Soc.* v. *Lesler* (Tex. Civ. App.), 110 S. W., 499; *Houston, etc., R. Co.* v. *Roberson* (Tex. Civ. App.), 138 S. W., 823.

In *Russell* v. *Palatine Ins. Co.*, 63 So., 644, 106 Miss. 290, 51 L. R. A. (N. S.), 471, it was held that the agent

of an insurance company who has authority to settle the accounts of another agent of the common employer has no implied authority to institute criminal proceedings against him for embezzlement, so as to render the employer liable for a malicious prosecution because of his act in so doing.

In *Thompson* v. *Bank*, 32 N. B., 335, it was held no part of the ordinary banking business for an agent to lay criminal information and to have a warrant issued for one of the bank's customers. Consequently, where an agent in charge of a branch of a bank criminally prosecuted a customer who had failed to pay certain notes, the court, in the above case, held that the agent acted without anthority, and that the bank was not liable for malicious prosecution.

In *Gillett* v. *Missouri Valley R. Co.*, supra, it was held that the chief secretary and treasurer of a corporation having control and management of the receipts and disbursements of corporate funds cannot arrest a person for embezzlement in the name of the state so as to render the company liable for malicious prosecution.

In *Cleveland Co-operative Stove Co.* v. *Koch*, supra, it was held that an agent authorized to collect money due a corporation, and even to bring suits, is not thereby authorized to charge the corporation with his own malicious acts in setting in motion the criminal procedure of the state, from the legitimate result of which the corporation could derive no benefit. If his motive was to obtain for the corporation a benefit from the abuse of the process, the corporation would not thereby be charged, even if the prosecution was in the line of his duty, as he

understood it, since his duty or authority in fact was not extended by his understanding of either.

To the same effect is *Springfield Engine & Threshing Co.* v. *Green,* 25 Ill. App., 106, an action for malicious prosecution, where it is held not to be within the express or implied authority of an agent employed to collect a note to prosecute the maker for forgery.

In *Willis* v. *Railroad Co.,* 26 S. E., 785, 120 N. C., 512, it was said: "In the absence of express orders to do an act, in order to render the master liable, the act must not only be one that pertains to the business, but must also be fairly within the scope of the authority conferred by the employment. . . . For illustration, a clerk to sell goods suspects that goods have been stolen, and causes an arrest to be made. The master is not liable for the imprisonment or for the assault, because the arrest was an act which the clerk had no authority to do for the master, either express or implied."

In *Reddit* v. *Singer Mfg. Co.,* 32 S. E., 392, 124 N. C., 100, it was said: "In the vast majority of the cases, . . . the principle is recognized that in some way the company must authorize or approve the tortious act of its agent, and . . . it would be unreasonable to hold the company liable on a bare presumption, in the absence of allegation or any proof of authority or ratification."

In *Mulligan* v. *Railway Co.* the New York court of appeals, in an opinion reported in 29 N. E., 952, 129 N. Y., 506, 14 L. R. A., 791, 26 Am. St. Rep., 539, held that a ticket agent of a railroad company who takes a bill believing it to be counterfeit in payment for tickets, and immediately procures the arrest of the person from whom he takes it, is not acting within the scope of his

business so as to make the railroad company liable for malicious prosecution, although the arrest was wrongful and the bill proved to be a good one.

In *Railroad Co.* v. *Brewer*, 28 A., 615, 78 Md., 394, 27 L. R. A., 63, it was held that the company was not liable in an action for malicious prosecution where its superintendent ordered the arrest of a passenger for placing in the fare box a counterfeit coin in payment of his fare. In that case the passenger dropped a lead nickel in the fare box. The conductor saw him do it and urged him to put some real money in the box for his fare. He refused to do so, and immediately thereafter, when the fact was reported to the superintendent, he ordered the arrest of the passenger, who, being discharged, brought an action against the company for malicious prosecution; and on these facts the court held the company was not liable.

In *Little Rock Traction, etc., Co.* v. *Walker*, 45 S. W., 57, 65 Ark., 144, 40 L. R. A., 473, it was held that where a conductor of a street car only had authority to put a passenger off of a car, the company is not liable in an action for malicious prosecution where the conductor had the passenger arrested for an offense of which he was found not to be guilty.

It must be held, in view of the foregoing decisions, that it is not within the scope of the authority, either express or implied, of an agent, such as Baxley was, to institute criminal prosecutions so as to bind his principal. It must be shown that the agent was authorized by his principal to institute the prosecution, or that his act has been subsequently ratified by his principal, in order to hold the principal liable.

152 Tenn.—45.

This being true, the instant case turns on whether or not the agent Baxley instituted the criminal proceedings or prosecutions against the plaintiff with the authority of the defendant company, or that it subsequently ratified his act in this regard. This authority was only sought to be shown by the declarations of the agent Baxley made on the trial of the criminal prosecutions instituted against the plaintiff before the justice of the peace for Perry county.

On the trial of the present suit in the circuit court, evidence was offered by the plaintiff tending to show that Baxley testified on the trial before the justice of the peace in the criminal proceedings, in substance, that he was authorized by the defendant company to institute said prosecutions. As hereinbefore stated, this evidence was objected to by the defendant company, the objection was overruled, and the evidence permitted to go to the jury.

We think this was error. These declarations were not made by Baxley at the time the warrants were sworn out and the prosecutions instituted against the plaintiff but some time afterwards. *Southern Life Insurance Co. v. Booker*, 9 Heisk., 606, 24 Am. Rep., 344. In this case the court said:

"The rule upon which the declarations of an agent are admissible against his principal is familiar. They must be declarations accompanying the act, or as part and explanatory of it . . . The declarations or admissions of Booker [the agent], made after the delivery of the policy, as to what had occurred at the making of the original contract, and also the offer to prove that Booker had subsequently agreed to surrender and abandon the policy of his wife, were properly rejected."

The same principle is announced in *Cheek* v. *Wheatley*, 11 Humph., 556, and to the same effect is the holding of the court in *Moore* v. *Bettis*, 11 Humph., 67, 53 Am. Dec., 771. In this latter case the court said:

"As to the first question, the rule is, that, 'where the acts of the agent will bind the principal, then, the representations, declarations and admissions, respecting the subject-matter, will also bind him, if made at the same time, and constituting part of the *res gestae*.' They are verbal facts, in the nature of original and not hearsay evidence, and may be proved by another as well as by the agent himself."

In *Cobb, Welch & Co.* v. *Johnson*, 2 Sneed, 73, 62 Am. Dec., 457, it was held that the declarations of an agent as to a transaction for which it is sought to make his principal liable by action cannot be made evidence against the principal unless they are directly connected with, and made a part of, the transaction. Thus, in an action against the the principal to recover damages for the loss of a hired slave, by the alleged negligence of the defendant, testimony as to the agent's declarations, made the day after the casualty by which the slave was killed, as to the manner of the killing, is not a part of the *res gestae*, but in the nature of hearsay evidence, and therefore inadmissible.

In 2 Corpus Juris, 939, it is said: "While the declarations of an alleged agent are of themselves incompetent to prove agency, if the agency is otherwise *prima facic* proved, they become admissible in corroboration, where they constitute a part of the *res gestae* and were made at the time of the transaction in question."

In Jones on Evidence (2d Ed.), section 255, it is said: "As a general rule parties are not chargeable with the declarations of their agents, unless such declarations or statements are made during the transaction of business by the agent for the principal and in relation to such business and while within the scope of the agency; in other words, unless the representations may be deemed a part of the *res gestae*."

To the same effect is the rule announced in *Frank* v. *Wright*, 205 S. W., 434, 140 Tenn., 535; also, *Gavin* v. *Walker*, 14 Lea, 643; *Moore* v. *Davis*, 4 Heisk., 540; *Railroad* v. *Byrley*, 153 S. W., 36, 152 Ky., 35, Ann. Cas., 1915D, 240, where it was held that the admissions or declarations of an agent cannot be given in evidence against the principal to establish agency, or the extent of the agent's authority.

In *Paulton et al.* v. *Keith*, 49 A., 635, 23 R. I., 635, 54 L. R. A., 670, 91 Am. St. Rep., 624, it was held that the declarations of the manager of a theatre that he was acting under the instructions of the owner in preventing the service of process on an actor engaged in the theatre were inadmissible in a suit to hold the owner liable for such act, upon the ground that the agent had no implied authority to prevent the service of process upon actors employed in the theatre.

To the same effect is the rule announced in 10 R. C. L., section 173, p. 989, and also in 1 R. C. L. Sup., p. 181.

We are of the opinion, for the reasons stated in the above-cited authorities, that the trial court committed error in admitting proof of the declarations made by the agent Baxley on the trial of plaintiff before the justice of the peace on the criminal warrants sworn out by him

Hudson v. Philadelphia Life Ins. Co.

as evidence of authority from the defendant insurance company to do so, and that the court of appeals committed error in not so holding:

With these declarations of Baxley out of the record, there is no evidence whatever that the defendant company authorized said prosecutions; in fact, it is not shown that it had any interest in said prosecutions. The undisputed evidence shows that the plaintiff did not owe it anything, but that the obligations which the plaintiff did owe were to Baxley personally, and he is the only one who had any reason to prosecute the plaintiff on the warrants sworn out by him.

It results that there is no error in the judgment of the court of appeals sustaining the defendant company's motion for a directed verdict and dismissing the plaintiff's suit. Its judgment in this regard will therefore be affirmed, with costs.