Tom L. COFFEE, Plaintiff/Applicant,

v.

PETERBILT OF NASHVILLE, INC., Defendant/Respondent.

Supreme Court of Tennessee, at Nashville.

Aug. 21, 1990.

George J. Duzane, Nashville, Barbara L. Broersma, Nashville, for plaintiff/applicant.

William B. Jakes, III, North & Gideon, Nashville, for defendant/respondent.

## OPINION

FONES, Justice.

Plaintiff sued defendant for false arrest and false imprisonment. Plaintiff was arrested and taken to jail in New York in 1983, on a bad check warrant. Arrangements were made with defendant for payment of the check in return for plaintiff's release from jail and dismissal of the charge. In 1987 plaintiff was arrested in Missouri on the same bad check warrant that caused his arrest in New York. The trial court awarded plaintiff $5,600 for false imprisonment resulting from the Missouri arrest. The Court of Appeals reversed and dismissed the case.

We reverse the Court of Appeals and reinstate the trial court's award of $5,600. Plaintiff's attorney announced during his opening statement that plaintiff was seeking recovery only for the second arrest in 1987 in Missouri.

Plaintiff testified that he bought a new truck from defendant, Peterbilt, in Nashville in 1978, had a wreck later in that year, and brought it back for repairs. Plaintiff gave defendant his personal check for $1,000, the amount of the deductible provision in his insurance policy, and apparently the insurance company paid the balance of the repair bill. Plaintiff's check was returned to defendant by plaintiff's bank for insufficient funds. The repairs were performed in Nashville, Tennessee, and the check was delivered to defendant in Nashville. In October 1978, plaintiff lived in Missouri and apparently the drawee bank was located in Missouri.

Peterbilt employed the collection department of Dun and Bradstreet to pursue the collection of the bad check. Dun and Bradstreet "worked the account for sometime" without success, then employed an attorney named Ruddy in Cape Girardeau, Missouri, to pursue collection of the bad check. Copies of correspondence in defendant's file indicated that Ruddy was attempting collection of the bad check from March 1979 through September 1979 without success. Sometime thereafter Ruddy obtained a warrant for the arrest of plaintiff on bad check charges. The warrant was obtained through the prosecuting attorney's office of Scott County, Missouri.

Plaintiff testified that he was in New York State in 1983 and was stopped at a tollgate on Interstate 90 where a driver's license check was in progress. The officers discovered that a felony warrant for plaintiff's arrest was outstanding, and plaintiff was taken to jail. He was "on a run" for Poole Truck Lines of Nashville, Tennessee. Plaintiff informed Herman Blanton at the truck line of his problem

and arrangements were made to pay defendant $1,000 for plaintiff's release from jail and dismissal of the bad check charge.

William Mullins was credit manager at Peterbilt in 1983. He testified that he was informed by either Mrs. Coffee or Mr. Blanton that plaintiff had been arrested in New York on a warrant charging him with giving Peterbilt a bad check and that he had no prior knowledge of the issuance of the warrant. He consulted the file and called Ruddy, and asked whether Peterbilt could accept payment of $1,000 from plaintiff and terminate the prosecution. Ruddy responded, "[I]f you want to." After some equivocation about what he told Mrs. Coffee with respect to dismissal of the charges, under questioning by the trial judge, Mullins testified that he told her, "... if she would pay that [$1,000], that they would make arrangements to drop the charges and get him out of jail." Arrangements were completed with Poole Truck Lines about payment of the $1,000 whereupon Mullins called Ruddy again and told him that "...[w]e would be getting our $1,000 and as far as Peterbilt was concerned, we were satisfied and for him to dismiss it and send me his bill."

Mullins testified that Ruddy's bill was received and paid, and as far as Peterbilt was concerned that was the end of it.

On 6 March 1987 plaintiff was arrested and placed in jail in Lafayette, Missouri, on the same bad check warrant that caused his 1983 arrest in New York. Plaintiff was held in jail from 6:45 a.m. to 7:00 p.m. On that date, Mrs. Coffee called Peterbilt and reported plaintiff's arrest to Mrs. Bonnie Overstreet, the company comptroller. Mrs. Overstreet called the sheriff's office in Benton, Missouri, the county seat of Scott County, Missouri. The sheriff referred her to David Summers, the prosecuting attorney in charge of the case. At first Summers said he could not release plaintiff until he had a letter from Peterbilt saying they would not prosecute, but later agreed to release plaintiff upon Mrs. Overstreet's

promise that a letter to that effect would be mailed to Summers that day. As a result of that arrangement plaintiff was released. Mrs. Overstreet testified that she called Attorney Ruddy, was informed that the file was in storage and would require considerable time to be retrieved. She then proceeded to deal with Summers.

In this non-jury case, the trial judge dismissed the false arrest action holding that plaintiff was arrested upon a lawful warrant. Turning to the false imprisonment claim, the trial judge held that defendant and its agent, lawyer Ruddy, assumed the duty to dismiss the criminal charge against plaintiff, implicitly because defendant promised Mrs. Coffee and also because "there was no longer a factual basis for the charge." Defendant's insistence that *Pera v. Kroger*, 674 S.W.2d 715 (Tenn.1984) relieved defendant of any responsibility for the second arrest because the Missouri authorities had control was rejected by the trial court, and its applicability to this case was also rejected by the Court of Appeals.

However, the Court of Appeals held that plaintiff had failed to show that defendant's "negligence in failing to inform the Missouri prosecuting attorney's office of the fact that plaintiff had paid the check was the proximate cause of his injuries"; that defendant did not control the prosecution; and "it is mere speculation to say that if Peterbilt had notified the Missouri authorities, the warrant would have been dismissed." It would seem that these statements by the Court of Appeals are contradicted by the fact that Mrs. Overstreet was able to persuade the prosecuting attorney, Summers, to release plaintiff from jail on the promise that a letter stating defendant did not desire to prosecute would be forthcoming.

■ However, the courts below and the parties have overlooked the controlling law applicable to this case.[1] A state's criminal law is of no force and effect beyond its territorial limits; thus a criminal offense committed in Tennessee cannot be prose-

---

**1.** It is the duty of this Court to apply the controlling law, for which there is a basis in the record, whether or not cited or relied upon by the parties. *See e.g. Nance by Nance v. Westside Hospital*, 750 S.W.2d 740, 744 (Tenn.1988).

cuted in Missouri. 21 Am.Jur.2d, *Criminal Law* § 344, and *State of Missouri v. Kleen*, 491 S.W.2d 244 (Mo.1973).

In *Kleen* a Missouri resident procured the purchase of a truck load of cottonseed meal that was picked up and paid for by check in Memphis, Tennessee. The check was drawn on a Missouri bank and in due course was returned unpaid for insufficient funds. The Supreme Court of Missouri held that defendant could not be prosecuted under the Missouri "insufficient funds check statute" because:

> The Missouri courts have no jurisdiction to prosecute for an offense which occurs in another state, *State v. Shaeffer*, 89 Mo. 271, 1 S.W. 293 (1886).

■ The warrant that was procured in Scott County, Missouri, is not in the record, nor did anyone testify as to its contents. But the testimony of Mrs. Overstreet and plaintiff establish that it was a felony warrant issued by a court located in the county seat of Scott County, Missouri, and David Summers was the prosecuting attorney in charge of prosecuting the case. Rule 22 of the Missouri Rules of Criminal Procedure provides the requirements for issuance of arrest warrants in felony cases. A felony complaint must be in writing, and among other requirements, it must state the facts constituting the felony, including the time and *place* committed. Rule 22.02. The arrest warrant must include a description of "the felony charged in the complaint." Rule 22.04. Thus, it follows that if the warrant used to arrest plaintiff, in New York and Missouri, was issued as required by Missouri law, it showed on its face that it was void for lack of jurisdiction to prosecute in Missouri. If it did not contain the place where the offense occurred, it was void for failure to comply with an express requirement of the Missouri Rules of Criminal Procedure.

■ The elements of the tort of false imprisonment are (1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint. 32 Am.Jur.2d *False Imprisonment* § 5 (1982). *Cf. Little Stores v. Isen-*

*berg*, 26 Tenn.App. 357, 172 S.W.2d 13 (1943).

Upon the broad original principles upon which the liability for false imprisonment is founded, one who secures a warrant from a court whose jurisdiction does not extend to the offense charged, the absence of jurisdiction being clear and not the subject of judicial decision in the case, is liable for the resulting arrest. Annot. 21 A.L.R.2d 643, 665 (1952).

■ Thus, Attorney Ruddy procured a warrant from a court that did not have jurisdiction of the offense charged, and it was used to arrest plaintiff on two occasions. The question remains, is Ruddy's client, Peterbilt, liable for the tort of false imprisonment?

In *Guilleaume v. Rowe*, 94 N.Y. 268, 46 Am.Rep. 141 (1883), where it was admitted that plaintiff's arrest was unlawful, the court held as follows:

> A party is bound by the acts of his attorney, although he does not give immediate direction as to the proceedings in an action, or is not with him at its successive stages. If he sets the attorney in motion he becomes liable as the cause progresses, and, if the result is in his favor, is responsible for the methods resorted to for the enforcement of the judgment.

In a later New York case, *Nossek v. Todd & Son*, 160 Misc. 528, 290 N.Y.S. 253 (1936), the same result was reached. In *Nossek*, the client had told the attorney to try to collect, but he did not request or specifically authorize the wrongful incarceration. Nevertheless, the client was held liable.

The general rule that has evolved, whether the agent is a lawyer or not, is that the master is liable for the acts of the servant which result in an unlawful arrest and detention when the agent is acting within the scope of the employment. Annot. 92 A.L.R.2d 15, 24 (1963). That annotation, entitled "Principal Liable for False Arrest Caused by the Actions of the Agent," cites *Hudson v. Philadelphia Life Ins. Co.*, 152 Tenn. 691, 280 S.W. 403 (1925) as adhering to that rule. Although the cause of the

action pursued by the plaintiff in *Hudson* was malicious prosecution, it was based upon an unlawful arrest, plus numerous charges of misconduct. During the course of the opinion, the court announced the following rule:

> The rule is well settled that the liability of a principal for the act of his agent in instituting a malicious prosecution or causing a false arrest or imprisonment is dependent upon whether the principal previously authorized or subsequently ratified it, or whether the act was within the scope of the agent's employment. If previously authorized or subsequently ratified, or if within the scope of the agent's employment, the principal is liable; otherwise he is not.

152 Tenn. at 702, 280 S.W. 403.

Although it is clear that Peterbilt did not previously authorize Ruddy to institute a criminal proceeding on a bad check charge, it was within the scope of his authority to do so. In addition, Peterbilt ratified Ruddy's action when it entered into the agreement with plaintiff's wife to dismiss the charge against plaintiff in consideration of payment of $1,000. In order to disavow the unlawful arrest it would have been necessary for defendant to procure plaintiff's release from the New York jail, unconditionally, and without consideration.

It follows that defendant's liability to plaintiff for false imprisonment in Missouri is based on two legal principles. The arrest warrant was illegal having been issued by a court having no jurisdiction of the offense, and the basis upon which the trial judge predicated liability, to wit, that defendant's agreement with plaintiff imposed an affirmative duty upon defendant to see that the bad check charge was dismissed and plaintiff's payment of the $1,000 eliminated any basis for the bad check complaint and warrant. As stated herein, the record clearly shows that prosecution of plaintiff in Scott County, Missouri, was at the pleasure of Peterbilt, in 1987, and there is no basis for speculation that in 1983 it was otherwise. Ruddy was Peterbilt's agent for the performance of the obligation to dismiss the bad check charge in 1983, and that performance was within the scope of his authority. His failure to perform was a negligent act of omission that directly and proximately caused the arrest of plaintiff in Missouri in 1987.

■ We have an additional comment to make about this case, but it does not change the result. False imprisonment is an intentional tort. Tennessee adheres to the traditional conflicts of law rule that the substantive law of the place where the tort occurred governs, absent considerations of public policy. *See e.g. Winters v. Maxey*, 481 S.W.2d 755 (Tenn.1972). The tort upon which plaintiff predicated this suit was the unlawful arrest in Missouri, therefore the false imprisonment law of Missouri should control the disposition of this case. This record is silent with respect to the applicability of Missouri tort law or its substance.

■ T.C.A. § 24–6–201 requires that the courts of this State take judicial notice of the common law and statutes of our sister states. T.C.A. § 24–6–204 requires that reasonable notice shall be given to adverse parties, in the pleadings or otherwise, of intent to rely upon the law of another jurisdiction. No notice of such intent was given and no request was made that the trial court take judicial notice of the law of Missouri. In that state of the record the applicable law must be presumed to be the same as the law in Tennessee. *See e.g., Investors Acceptance Co. v. James Talcott, Inc.*, 61 Tenn.App. 307, 454 S.W.2d 130 (1969).

The judgment of the Court of Appeals is reversed, and the judgment of the trial court awarding plaintiff $5,600 damages for false imprisonment is reinstated. This case is remanded to the trial court for the entry and enforcement of a judgment to that effect. Costs are adjudged against defendant.

DROWOTA, C.J., and COOPER, HARBISON and O'BRIEN, JJ., concur.