FILED
06/06/2025
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 11, 2024 Session

## SAINT CLAUDE RENEL ET AL. v. DREXEL CHEMICAL COMPANY

Appeal from the Circuit Court for Shelby County
No. CT-1758-23      Mary L. Wagner, Judge

———————————————————

### No. W2023-01693-COA-R3-CV

———————————————————

J. STEVEN STAFFORD, P.J., W.S., dissenting.

The primary question in this case is whether the trial court correctly dismissed Plaintiffs' action on the basis of extraterritoriality.[1] In answering that question, the trial court ruled that because no Tennessee law was on point to address the issue, federal law provided an appropriate framework to resolve the dispute. Under that framework, a court is tasked with answering two questions. First, "whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially." ***RJR Nabisco, Inc. v. Eur. Cmty.***, 579 U.S. 325, 337 (2016). If the statute does not give a clear indication of extraterritoriality, all is not lost, however, so long as there can be a domestic application of the statute. *See **id.*** In other words,

> If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's "focus.'" If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad[.]

***Id.***

Both parties to this appeal initially relied on the federal framework in their briefs, with Defendant going so far as to state that the parties "[a]gree on the [a]nalytical

---

[1] Certainly, Defendant raised other arguments in favor of dismissal both in the trial court and on appeal. Indeed, it appears that Plaintiffs have a steep hill to climb if they are ever to obtain relief from a Tennessee court. In this dissent, however, I focus only on the basis for dismissal cited in the majority opinion.

[f]ramework[.]"[2] The majority, however, rejects this two-step framework, holding that Tennessee law essentially demands that we answer only the first question. Respectfully, I cannot agree with this conclusion.

I begin with how the majority reaches its conclusion. After providing a thorough analysis of the federal presumption against extraterritoriality, the majority opinion moves on to Tennessee law on the subject. In particular, the majority opinion relies on the analysis employed by this Court in *Williaford v. Holiday Inns, Inc.*, No. 24, 1988 WL 77627, at *2 (Tenn. Ct. App. July 28, 1988), *perm. app. denied* (Tenn. Oct. 31, 1988). *Williaford* is a case that involved whether the Tennessee Human Rights Act can be applied extraterritorially. And we ultimately held that because the Tennessee Legislature did not intend for the Tennessee Human Rights Act to apply to torts committed outside this State, the plaintiff's claim under that statute failed. *Id.* at *3–4.

But the majority's reliance on *Williaford* is misplaced. First, as the majority opinion notes, neither party cited *Williaford* in their initial briefing to this Court. Instead, the parties, like the trial court, focused on law applying the federal presumption to the facts of this case. Even after we asked for supplemental briefing focused on Tennessee law, neither party pointed to *Williaford* as having any relevance to the issue at hand.

The majority opinion is correct that we have a duty to apply "the controlling law" regardless of whether it is relied upon by the parties. *Kocher v. Bearden*, 546 S.W.3d 78, 85 n.8 (Tenn. Ct. App. 2017) (quoting *Coffee v. Peterbilt of Nashville, Inc.*, 795 S.W.2d 656, 658 n.1 (Tenn. 1990)). But *Williaford* is not controlling law. Instead, Rule 4 of the Rules of the Supreme Court of Tennessee provides that unreported cases are considered controlling authority only in limited circumstances not present here. *See* Tenn. R. Sup. Ct. 4(G). In cases such as this, unreported cases are merely persuasive authority. *Id.*

Of course, my colleagues and I often rely on unreported cases in our opinions, as they can have considerable persuasive value, particularly where no reported case is directly on point.[3] Beyond its unreported status, however, there is a more pressing problem with the majority opinion's reliance on *Williaford*: it does not address the fundamental issue in this appeal.

The majority opinion states that the "pivotal question" of this appeal is whether "the statute itself, the Tennessee Products Liability Act, purports to apply extraterritorially." I cannot agree. The first prong of the *RJR Nabisco* test does ask this question, as did this Court in *Williaford*. But regardless of the fact that the majority chooses to focus solely on

---

[2] Following our request for supplemental briefing, Defendant switched tactics, arguing that this Court should not adopt the second step of the federal framework.

[3] The majority cannot be faulted for its decision to focus on Tennessee law despite the parties' initial focus on federal law, as the supplemental briefing request gave the parties ample notice and an opportunity to be heard on this issue. *See generally State v. Bristol*, 654 S.W.3d 917, 927 (Tenn. 2022).

this question, that is not the real issue in this appeal. Rather, the dispositive question here is whether Plaintiffs have made out a prima facie case to apply the TPLA *territorially*.

Unfortunately, Plaintiffs' stated issue mis-frames their own argument, which unnecessarily complicates our review of this appeal. The issue designated in Plaintiffs' brief questions whether the trial court erred in concluding that the TPLA did "not have extraterritorial application." But in the body of their brief, Plaintiffs make clear that they are not addressing the first prong of the *RJR Nabisco* analysis, i.e., whether the Tennessee General Assembly intended for the TPLA to apply extraterritorially.[4] Instead, the cases cited and the argument set forth reveal that Plaintiffs challenge only the trial court's conclusion under the second prong of the *RJR Nabisco* framework that the case does not involve a permissible domestic application of the TPLA.

Although the majority takes umbrage with how this argument was raised as an issue, it does not appear that the majority opinion ultimately concludes that this argument is waived. In any event, I conclude that waiver does not apply here. How a party chooses to frame its issues is an important part of appellate briefing, as "[a]ppellate review is generally limited to the issues that have been presented for review." *Trezevant v. Trezevant*, 696 S.W.3d 527, 530 (Tenn. 2024), *per curiam order* (quoting *Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012)). The Tennessee Supreme Court has therefore cautioned litigants that "issues should be framed as specifically as the nature of the error will permit in order to avoid any potential risk of waiver." *Hodge*, 382 S.W.3d at 335 (citing *Fahey v. Eldridge*, 46 S.W.3d 138, 143–44 (Tenn. 2001)). Recently, however, the Tennessee Supreme Court has held that "when the arguments set forth in an appellate brief fall within the scope of the stated issues, and the issues and argument taken together clearly present the grounds for appellate relief, the reviewing court should review the substantive issues." *Trezevant*, 696 S.W.3d at 531.

Here, although Plaintiffs frame their issue as one of extraterritoriality, it is clear that they are asserting that the trial court erred in its conclusion under the second prong of the *RJR Nabisco* framework that the TPLA could not be applied domestically in this case. In support of this argument, Plaintiffs note that the TPLA has two focuses: the "consumer expectation" test and the "prudent manufacturer" test. *See generally Holman v. BIC Corp.*, 925 S.W.2d 527 (1996). Plaintiffs argue, inter alia, that claims involving the "prudent manufacturer" test focus on the location of the manufacturer, not the location of the injury.[5] Specifically, Plaintiffs assert that in enacting the TPLA, "the Legislature contemplated that a plaintiff, without regard to their location or where they incurred damage, could resort to the Tennessee courts to attempt to impose liability on a Tennessee manufacturer for an

---

[4] The majority's decision to repeatedly mention Plaintiffs' failure to make a serious argument as to the first prong of the *RJR Nabisco* framework is therefore somewhat perplexing.

[5] This argument is not "limited" as characterized by the majority opinion, but spans over six pages and thoroughly discusses the "focus" of the TPLA through the lens of the *RJR Nabisco* test.

injury caused by its product anywhere in the world[.]"[6] Moreover, there is no dispute that Defendant is a Tennessee corporation, and Plaintiffs' complaint alleges that Defendant's decisions regarding the development and marketing of the chemicals in this case all "center[ed]" around its Tennessee corporate headquarters.[7] Thus, the "pivotal question" is not whether the TPLA can be applied extraterritorially but whether there is a basis in the record for a domestic application of the TPLA—that is, whether sufficient conduct occurred in Tennessee that a claim can survive notwithstanding that the TPLA is not extraterritorial.

This question, however, was neither raised nor addressed in *Williaford*. Indeed, the plaintiff's argument in that case was that the Tennessee statute should apply regardless of the fact that "the conduct . . . occurred outside the State of Tennessee[.]" 1988 WL 77627, at *2. So then, the *Williaford* court was not required to consider whether there could be a domestic application of the relevant statute when the injury occurred elsewhere. "It is axiomatic that judicial decisions do not stand for propositions that were neither raised by the parties nor actually addressed by the court." *Staats v. McKinnon*, 206 S.W.3d 532, 550 (Tenn. Ct. App. 2006). Because the *Williaford* court was not called upon to resolve the dispute central to this appeal, it can offer no guidance on the issue and provides no authority to support the conclusion that an argument regarding the domestic application of the TPLA is "irrelevant" to this case.[8] Respectfully, the majority opinion erred in relying on it for that proposition.

Setting *Williaford* aside, it appears that this question is something of an issue of first impression in Tennessee. Tennessee courts often look to the decisions of other jurisdictions, including the federal courts, in resolving issues of first impression or otherwise unsettled issues. *See, e.g.*, *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 244 (Tenn. 2014) (holding that a Tennessee constitutional provision should be applied in the same manner as a federal constitutional provision); *see also* *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 238 (Tenn. 2015) (returning Tennessee's summary judgment standard to one consistent with the federal standard). But that does not mean that Tennessee is forced to adopt a rule co-extensive with the federal standard. I see nothing preventing Tennessee courts from adopting a rule that is less broad than what the United

---

[6] I recognize that Defendant alternatively asserts that Plaintiffs' design defect and failure to warn claims under the TPLA should have been dismissed for failure to state a claim upon which relief could be granted. The trial court denied the motion to dismiss on this ground, concluding that the complaint alleged sufficient facts to make out these claims under Tennessee's liberal notice pleading standard. Again, the only issue I address in this appeal is the conclusion reached by the majority opinion.

[7] I take these allegations as true for purposes of adjudicating Defendant's motion to dismiss. *Chambless v. Rutledge*, 699 S.W.3d 913, 921 (Tenn. Ct. App. 2024).

[8] Even considering *Williaford* as persuasive on this topic, the court also considered the then-applicable choice of law rules in refusing to apply the Tennessee Human Rights Act extraterritorially. *Id.* at *3–4. Despite its reliance on *Williaford*, the majority opinion does not consider our current choice of law rules in making its decision.

States Supreme Court adopted in **RJR Nabisco** in determining which claims fall within our territorial limits under the TPLA. What we cannot do, however, is ignore Plaintiffs' arguments under the guise that they are "irrelevant" and refuse to answer the only question squarely presented by this appeal.

In sum, the majority opinion spills considerable ink to answer a question that no party disputes in this appeal, while ignoring the more difficult question that is actually at issue. Absolutely nothing in **Williaford** holds that the issue raised by Plaintiffs is irrelevant. Just as plaintiffs are masters of their complaints, appellants are masters of their appeals. *See* **Binns v. Trader Joe's E., Inc.**, 690 S.W.3d 241, 255 (Tenn. 2024). And Plaintiffs' argument in this appeal is that, regardless of the fact that their injuries occurred in the Dominican Republic, sufficient conduct occurred in Tennessee by Defendant that the TPLA can be applied domestically. This Court is not at liberty to ignore that question. Because I conclude that the question of whether the facts of this case permit a domestic application of the TPLA must be answered in order for this appeal to be fully adjudicated, I must respectfully dissent.

    s/ J. Steven Stafford        
J. STEVEN STAFFORD, JUDGE